Rockingham
No. 98-139

### TOWN OF SEABROOK

v.

### VACHON MANAGEMENT, INC. & A.

February 8, 2000

*Donahue, Tucker & Ciandella*, of Exeter (*Robert D. Ciandella* and *Scott E. Woodman* on the brief, and *Mr. Ciandella* orally), for the plaintiff.

*Marshall Law*, of East Kingston (*Keri J. Marshall* on the brief, and *W. Michael Todd* orally), for the defendants.

*H. Bernard Waugh, Jr.*, of Concord, by brief, for New Hampshire Municipal Association, as *amicus curiae*.

BRODERICK, J. The plaintiff, Town of Seabrook (town), sought an injunction against the defendants, Vachon Management Inc. (Vachon) and Adult Video Inc. (Adult Video), to stop live nude dancing at the defendants' business in Seabrook. The Superior Court (*Gray*, J.), following a hearing on the merits, dismissed the petition on the basis that live nude dancing, although in violation of the town's zoning ordinance for sexually-oriented businesses, was a lawful nonconforming use. We reverse.

We sustain the findings and rulings of the trial court "unless they are lacking in evidential support or tainted by error of law." *Public Serv. Co. of N.H. v. Town of Bow*, 139 N.H. 105, 107, 649 A.2d 65, 66 (1994) (quotation omitted), and we review the record in the light most favorable to the defendants. Adult Video owns and operates a business known as "Leather and Lace," which opened in 1990. It originally sold adult books, magazines, videotapes, and paraphernalia, and subsequently installed coin-operated video booths for the purpose of viewing videotapes. Leather and Lace was issued one-year licenses to operate the video booths during 1990, 1995, 1997, and 1998. At present, it is licensed to operate ten booths.

Vachon is the owner of a multi-unit building on Lafayette Road in Seabrook (property). When Leather and Lace opened in 1990, it occupied one of six first-floor units in the building, known as unit one. The adjacent unit, unit two, was occupied by a third party who between 1989 and 1992 used it for retail computer equipment sales.

In May 1991, the town's building inspector, Robert Moore, received a complaint that the chief executive officer of Leather and Lace, Ivan Eaton, was living in the back room of the business. As a result, Moore inspected the unit and discovered that Adult Video had constructed a stage in the rear storage/office area to facilitate the presentation of live entertainment, including mud and oil wrestling, for audiences of up to twenty people. Moore advised Eaton that the unit's septic system would have to be upgraded to

accommodate the increased traffic using his premises to view live entertainment. Moore also expressed concerns that the site's parking capacity would not accommodate the additional patrons. Moore told Eaton that a change of use from retail to live entertainment in unit one, to be lawful, would require site plan approval by the town planning board. *See* SEABROOK, N.H., ORDINANCES ch. 225, art. V, §§ 224-32 (1986). Eaton did not pursue site plan review and subsequently removed the stage and ceased offering live entertainment.

In September 1992, Moore received a complaint that mud wrestling was occurring in unit two. He visited the site to verify the complaint, and although he was unable to gain entry, he observed a sign posted at the property which advertised mud wrestling. In fact, since January 1992, Eaton had been staging bachelor parties and live wrestling events in unit two. Because the sewer system in unit one was inadequate to support live entertainment, Eaton expanded his operations to unit two, which was on a separate sewer system.

In March 1994, the town enacted a zoning ordinance designed to regulate the operation of "sexually oriented businesses." The regulations prohibit a sexually oriented business from operating within 1,000 feet of a church or place of worship, 300 feet of a residence, or 500 feet of the town boundaries. By virtue of its proximity to the town border, a residence, and a church, Leather and Lace violated the ordinance.

Between 1994 and 1996, Moore received no complaints about Leather and Lace. Indeed, in May 1995, Moore signed an affidavit asserting that Leather and Lace had never been in violation of State or local health codes or other laws over which Moore had jurisdiction. In late November 1996, however, the Seabrook police chief informed Moore that Leather and Lace had expanded its operations to include unit two, and that it was holding live entertainment on the premises. Moore visited the property in January 1997 to talk with Eaton about the complaint and discovered that a portion of the wall separating units one and two had been removed. He also observed that Eaton had installed two booths for viewing live nude dancing (fantasy booths) and other performances in unit two. The fantasy booths were installed in October 1996 in the area where bachelor parties had been held since 1992. Mud wrestling ceased when the fantasy booths were introduced. At present, Leather and Lace has six video booths and four fantasy booths. It no longer offers mud wrestling or bachelor parties.

At the conclusion of the town's case, the superior court dismissed its injunction petition on the basis that live nude entertainment was

lawful in unit two at the time the town began to regulate sexually-oriented businesses in 1994. In addition, the court concluded that the activity existed with the knowledge and apparent acquiescence of town officials. It held that the fantasy booths qualified as a nonconforming use, and were thus unaffected by the 1994 zoning ordinance on sexually oriented businesses. Although the trial court did not specifically find that fantasy booths were grandfathered as a proper expansion of mud wrestling, a preexisting nonconforming use, such a conclusion is implicit in the trial court's opinion.

On appeal, the town argues that the trial court erred in ruling that fantasy booths were a nonconforming use exempt from the 1994 zoning ordinance. It also asserts that although mud wrestling was a permitted use when introduced in unit two in 1992, it represented a change from the prior use of the unit for retail sales of computer equipment, and thus was subject to site plan review. Because no site plan was ever submitted, the town argues, the change of use was unlawful, thereby rendering it an illegal nonconforming use when the 1994 zoning ordinance was enacted.

The defendants counter that fantasy booths are a lawful nonconforming use because the change in use from video booths to fantasy booths was not substantial and therefore did not require site plan review. Finally, they argue that the doctrines of laches and estoppel provide an equitable basis to defeat the town's injunction petition.

I

The town's zoning ordinance permits several categories of land use. "Recreation," a permitted use, includes "[c]ommercial amusements and entertainment which [are] conducted within the confines of a building." SEABROOK, N.H., ORDINANCES ch. 263 (1991). The ordinance specifically incorporates "Commercial Entertainment," which is defined as "any show or display, whether live, by film or by other means of presentation, which is provided in exchange for value received or pledged." *Id.* ch. 263, § 3. The town zoning ordinance also allows for "Retail and Service Businesses." *See id.*

In 1985, the town passed a site plan review regulation. *See* RSA 674:43, I, :44 (Supp. 1987). The regulation provides: "Site plans for all nonresidential development . . . whether or not such development includes a subdivision or resubdivision of the site, shall be reviewed by the Planning Board. This regulation shall apply to new construction, substantial expansion of existing buildings, a *change of use* or combinations of the above." SEABROOK, N.H., ORDINANCES ch. 225, art. V, §§ 224-32 (emphasis added.)

In 1994, the town adopted a zoning ordinance to regulate "sexually oriented businesses," which were defined as "any place of business in which any of the following activities are conducted: adult bookstore or adult video store, adult motion picture theater . . . adult theater." SEABROOK, N.H., ORDINANCES ch. 225, art. XIV (1996). The ordinance forbade such businesses "within 1,000 feet of a church or place of worship . . . 300 feet from a residence . . . or 500 feet from Town boundaries," but allowed them to continue unabated if they "ha[d] been established at their existing locations prior to the effective date of th[e] ordinance." *Id.*

■ The New Hampshire Constitution and State statute both recognize that an established use of land is not disturbed by a subsequent land restriction. N.H. CONST. pt. I, arts. 2, 12; RSA 674:19 (1986). To qualify for such protection, a nonconforming use must lawfully exist at the time the restriction is adopted and have continually existed since that time. *Arsenault v. Keene*, 104 N.H. 356, 358-59, 187 A.2d 60, 62 (1962). In keeping with the general policy of zoning law to carefully limit the extension and enlargement of nonconforming uses, we strictly construe provisions that permit the continuance of such uses. *See id.* at 358, 187 A.2d at 62. "Accordingly, the party asserting that a proposed use is not new or impermissible bears the burden of proof." *Peabody v. Town of Windham*, 142 N.H. 488, 493, 703 A.2d 886, 889 (1997).

■ It is not disputed that the use of unit two for mud wrestling, which began in 1992, violated the town's "sexually oriented businesses" ordinance because of its location. Although the use existed before the town enacted the ordinance in 1994, it does not qualify as a nonconforming use because it was not a lawful preexisting use. *See Arsenault*, 104 N.H. at 359-60, 187 A.2d at 62-63. When Leather and Lace converted unit two from a computer retail establishment to a venue for mud wrestling in 1992, it changed the use from "retail" to "commercial entertainment." This change was sufficient to trigger the town's site plan review ordinance because it constituted a change from one "permitted use" to another. *See* SEABROOK, N.H. ORDINANCES ch. 225, art. V, §§ 224-32. The purpose of site plan review is to allow the town to evaluate issues of public safety, health, and welfare when the use of property changes. All were implicated by the introduction of live entertainment. Because the change in use did not receive site plan approval, it was illegal and therefore ineligible to later qualify as a lawful nonconforming use. *See id.*

The defendant's argument that site plan approval was not required because fantasy booths were not substantially different from

the prior use of the property misses the mark. The defendant attempts to apply the doctrine for the lawful expansion of nonconforming uses to the town's site plan review process for change of use. The two are not related. While RSA 674:19 protects the expansion of nonconforming uses provided the expanded use is not "substantially different" from the existing use, the town's site plan review ordinance includes no such qualifying language. *See id.* Rather, it provides that the planning board *shall* review site plans for nonresidential development including "new construction, substantial expansion of existing buildings, a change of use, or combinations of the above." *Id.*

Even if a substantially different use were required, the defendant relies upon a false comparison. In determining whether there was a substantially different use, the proper comparison would involve the prior use of unit two for computer retail sales and its subsequent use for live entertainment; not between existing activities in unit one and subsequent activities in unit two.

In addition, policy considerations dictate that the test for expansion of a nonconforming use be more restrictive than the test for the "change of use" for site plan review. The purpose of RSA 674:19 is to "protect[] property rights that antedated the existence of an ordinance from what might be an unconstitutional taking." 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE PLANNING AND ZONING § 8.02, at 115 (1993). The requirement that an expansion of a nonconforming use be "substantially different" before a land use regulation will apply provides a check on the town's authority to regulate out of existence a vested property right. By contrast, the purpose of requiring site plan approval is "to assure that sites will be developed in a safe and attractive manner and in a way that will not involve danger or injury to the health, safety, or prosperity of abutting property owners or the general public." *Id.* § 30.02, at 377. If a town is not permitted to review site plans for all changes in use, it will be unable to measure the impact of such changes on the existing infrastructure and site conditions to protect the public health, safety, and welfare.

## II

The defendants next argue that the town is estopped from enforcing its zoning ordinance because it granted them amusement licenses, and therefore made representations, upon which they reasonably relied, that they would be permitted to continue to offer live entertainment. In addition, the defendants argue that town

officials were aware of the offending activity but failed to object in a timely manner. The town asserts it made no such representation to the defendants because licenses, by themselves, create only a "temporary privilege" rather than a vested right. Moreover, it argues that the defendants were aware that site plan review was necessary for live entertainment.

"Although municipal corporations may, indeed, be subject to estoppel, the law does not favor its application against [them]. This is especially true when a valuable public interest may be jeopardized." *Healey v. Town of New Durham*, 140 N.H. 232, 239, 665 A.2d 360, 367 (1995) (quotation omitted). Accordingly, the doctrine is applied against a municipality "with caution and only in exceptional cases under circumstances clearly demanding its application to prevent manifest injustice." 28 AM. JUR. 2D *Estoppel and Waiver* § 29, at 794 (1966).

Equitable estoppel "serves to forbid one to speak against his own act, representations, or commitments to the injury of one to whom they were directed and who reasonably relied thereon." *Great Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 290, 608 A.2d 840, 853 (1992) (quotation omitted). The four necessary elements for estoppel are:

> first, a false representation or concealment of material facts made with knowledge of those facts; second, the party to whom the representation was made must have been ignorant of the truth of the matter; third, the representation must have been made with the intention of inducing the other party to rely on it; and fourth, the other party must have been induced to rely upon the representation to his or her injury.

*Healey*, 140 N.H. at 239-40, 665 A.2d at 367 (quotation omitted). "In addition, estoppel may be invoked against a town as a result of conduct or statements by town officials only if the conduct or statements were authorized." *Id.* at 240, 665 A.2d at 367. The defendants "bear the burden of proving the elements of their estoppel claim." *Id.* (quotation omitted). Because the trial court did not rule on the issue of whether the doctrine of estoppel applies to bar the town's claim, we decide the issue in favor of the town only if a reasonable finder of fact could not find differently as a matter of law.

We decline to apply the doctrine of estoppel in this case because the defendants did not meet their burden of proving that, by virtue of issuing one-year licenses for the operation of amusement booths,

the town represented that the defendants would be permitted to continue to offer live performances. The defendants rely upon cases in which estoppel was applied against a municipality that issued, and later attempted to revoke, building permits. *See Aranosian Oil Co. v. City of Portsmouth*, 136 N.H. 57, 60, 612 A.2d 357, 359 (1992); *Turco v. Town of Barnstead*, 136 N.H. 256, 263, 615 A.2d 1237, 1240 (1992). The permits issued in *Aranosian* and *Turco* conveyed vested rights that could be reasonably relied upon by the landowner in the future. *See Aranosian*, 136 N.H. at 60, 612 A.2d at 359; *Turco*, 136 N.H. at 263, 615 A.2d at 1240. In this case, the defendants were issued licenses to operate "amusement devices" for one year periods requiring annual renewal. *Compare Turco*, 136 N.H. at 263, 615 A.2d at 1240 (building permit confers vested rights) *with LSP Assoc. v. Town of Gilford*, 142 N.H. 369, 376, 702 A.2d 795, 800 (1997) (license is transient or impermanent interest which does not constitute interest in land). Accordingly, by issuing licenses to the defendants on an annual basis, the town made no representation to the defendants that they could continue to offer live entertainment indefinitely.

In addition, the defendants were aware that site plan review was required for a change of use. *See Healey*, 140 N.H. at 239-40, 665 A.2d at 367. Moore warned the defendants in 1991 that a change of use would require site plan review to be lawful. Thus, we decline to estop the town from enforcing its site plan ordinance.

### III

The defendants' final argument is that the town is barred from enforcing its site plan ordinance by the doctrine of laches. The defendants contend, and the trial judge agreed, that town officials had knowledge that the defendants had offered live entertainment since September 1992, yet delayed enforcing the town's site plan review requirements for four years. Because the delay was unreasonable and prejudicial, the defendants argue, the doctrine of laches should bar enforcement of the ordinance. The town counters that the doctrine of laches does not apply where it acted in its governmental capacity. Alternatively, it contends that the town's dilatory enforcement was neither unreasonable nor prejudicial.

While the weight of legal authority provides that laches may not bar an enforcement action by a municipality acting in its governmental capacity, *see, e.g.*, 17 E. MCQUILLIN, MUNICIPAL CORPORATIONS § 49.09, at 216 (3d ed. rev. 1993); 4 ANDERSON'S AMERICAN LAW OF ZONING § 29.15, at 733-34 (4th ed. 1997), the doctrine

that "no laches can be imputed to the government, and against it no time runs so as to bar its rights, is not law in New Hampshire." *State v. Company*, 49 N.H. 240, 248 (1870); *cf. Appeal of Plantier*, 126 N.H. 500, 505, 509, 494 A.2d 270, 272, 275 (1985) (applying "laches-type doctrine" to bar hearing of nine-year-old complaint as a requirement of procedural due process in professional license revocation hearing). Accordingly, we will address the defendants' argument, bearing in mind that laches has been allowed against government entities only in "extraordinary and compelling circumstances." 4 P. ROHAN, ZONING AND LAND USE CONTROLS, § 52.08[4], at 85 (1996); *see also Appeal of Plantier*, 126 N.H. at 508, 494 A.2d at 274 ("Because of the importance of the government's function in disciplinary actions . . . laches cannot be imputed by the mere passage of time.")

"Laches is an equitable doctrine that bars litigation when a potential plaintiff has slept on his rights." *In re Estate of Laura*, 141 N.H. 628, 635, 690 A.2d 1011, 1016 (1997). Ascertaining whether the doctrine of laches applies "is not a mere matter of time, but is principally a question of the inequity of permitting the claim to be enforced . . . . Because it is an equitable doctrine, laches will constitute a bar to suit only if the delay was unreasonable and prejudicial." *Healey*, 140 N.H. at 241, 665 A.2d at 368 (quotations and citation omitted). Factors germane to the analysis include "the knowledge of the plaintiffs, the conduct of the defendants, the interests to be vindicated, and the resulting prejudice." *Id.* "The party asserting laches bears the burden of proving both that the delay was unreasonable and that prejudice resulted from the delay." *State v. Weeks*, 134 N.H. 237, 240, 590 A.2d 614, 616-17 (1991). Because the trial court did not rule on the issue of whether laches applies to bar the town's claim, we decide the issue in favor of the town only if a reasonable finder of fact could not find differently as a matter of law.

▮ We decline to enforce the equitable remedy of laches in favor of the defendants, who knowingly violated the site plan review ordinance. *See Healey*, 140 N.H. at 242, 665 A.2d at 369 ("Knowing and deliberate violation of a land use restriction by [the defendants] is conduct that changes the equities in [the town's] favor.") One who consciously disregards the law cannot invoke laches as a defense against its proper enforcement. *See id.*

*Reversed.*

BROCK, C.J., did not sit; the others concurred.