Manchester Retirement Board
No. 2000-387

## APPEAL OF ROBERT STANTON

### (Board of Trustees of the City of Manchester Employees' Contributory Retirement System)

Argued: November 13, 2001
Opinion Issued: May 24, 2002

*Murphy, Hesse, Toomey & Lehane, LLP*, of Boston, Massachusetts and *Craig, Wenners & Craig, P.A.*, of Manchester (*Katherine A. Hesse* and *Doris R. MacKenzie Ehrens* on the brief, and *Ms. Hesse* orally), for the petitioner.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Linda S. Johnson* and *Jeremy T. Walker* on the brief, and *Ms. Johnson* orally), for the respondent.

BROCK, C.J. The petitioner, Robert Stanton, appeals a decision of the Board of Trustees of the City of Manchester Employees' Contributory Retirement System (board) to retroactively revoke pension benefits he accumulated while working for the City of Manchester Employees' Contributory Retirement System (system). He also appeals the board's decision to reduce the amount of his pension. We vacate and remand.

The petitioner was employed by the City of Manchester (city) at the city water works beginning in 1973 and was enrolled in the city's retirement plan (plan) shortly thereafter. The plan was established pursuant to Laws 1973, chapter 218 (the Act), which defines a "member" of the plan as "any employee of the city who becomes covered under the retirement system." Laws 1973, 218:1, VI.

In 1985, the petitioner resigned from the city water works and began working for the system office as the benefits administrator, later titled the executive director, and board secretary; he continued making contributions to the plan. In 1987, the petitioner was elected to serve as a member of the board. When his election was challenged by an individual who claimed the petitioner was not a city employee, the board's legal counsel advised the board that the petitioner was a city employee and could, therefore, be elected to the board. The petitioner served as a board member until 1990.

In February 1992, the board discussed developing a formal employee benefits package for system office staff, but was unsure whether the staff members were employees of the city or of the system. In a series of opinion letters written between 1992 and 1994, the board's legal counsel opined that system office staff were employees of the system rather than

the city and were, therefore, prohibited from participating as covered members of the plan. At that time, the board's legal counsel urged "expedient remedial action by the Retirement System with respect to its current coverage of those nongovernmental employees among its membership." Although the board discussed creating a separate plan for system employees, it determined that such a plan would be too expensive. Consequently, no separate plan was established.

In 1996, the controversy had still not been resolved. At that time, the board's legal counsel prepared a document to be signed by all new employees, acknowledging that the employee was "not eligible for retirement or pension benefits offered by the System to existing employees." Additionally, in response to an inquiry whether *de minimus* participation by private sector employees in a governmental plan was permitted, counsel advised, "Perhaps it would be best to sit this one out a while longer."

The uncertainty persisted. Notwithstanding the board's legal counsel's opinion that system employees were not entitled to participate in the plan, in 1998, Joanne Hughes, a system employee, retired and, with board approval, received benefits under the plan.

On June 1, 1999, the petitioner submitted a formal "Letter of Intent for Retirement" together with a "Straight Life Annuity Application Form." The final retirement benefit calculation provided by the system indicated that he was entitled to pension benefits in the amount of $2,604.38 per month and concluded: "[I]t is a pleasure for us to provide you with this measure of security." By telephone poll conducted on June 29, 1999, the board agreed that the petitioner's pension would be effective July 1, 1999, but two members expressed disagreement with the final pension calculation.

On October 28, 1999, four months after the petitioner began receiving his pension, the board informed him that "[it] has taken your request for retirement benefits under advisement[, and that a]ny payments made from the System funds are provisional in nature and should not be construed as formal acceptance of your pension request." At that point, it informed the petitioner for the first time that "[i]mportant issues exist as to your eligibility to receive the benefits you have requested."

By letter dated November 18, 1999, the board announced that as of November 1, it was reducing the petitioner's monthly pension benefit to $2,074.00. On December 30, 1999, the board revoked the pension benefits he had accumulated while working for the system because he was not a city employee and, therefore, not entitled to participate in the plan. The board determined that the petitioner was entitled to pension benefits only for his years at the city water works. The petitioner requested a hearing.

Following a hearing in March 2000, the board issued a final written decision revoking the petitioner's pension benefits, but agreeing to refund his contributions with interest. In support of its decision, the board concluded that system employees were not city employees and thus were prohibited from participating in the plan under both State and federal law. The petitioner filed a motion for rehearing, arguing, among other things, that the board was estopped from denying him pension benefits. The board summarily denied the motion. This appeal followed.

In reviewing a decision of the board, all factual findings of the board are deemed to be *prima facie* lawful and reasonable. RSA 541:13 (1997). "We will not set aside the . . . board's order unless it is contrary to law or we find by a clear preponderance of the evidence that the order is unjust or unreasonable." *Appeal of Barry*, 143 N.H. 161, 163 (1998).

We begin by considering whether the petitioner was eligible to participate in the plan. To be an eligible member of the plan, the Act provides that the person must be an "employee of the city." Laws 1973, 218:1, VI. The Act, however, does not define "employee of the city." In determining whether an employer-employee relationship exists, we generally consider factors such as managerial and fiscal control. *Town of Littleton v. Taylor*, 138 N.H. 419, 421 (1994). Our focus is "whether on all the facts the community would consider the person an employee." *Boissonnault v. Bristol Federated Church*, 138 N.H. 476, 478 (1994) (quotation omitted).

Having considered all of the circumstances in this case, we conclude that the petitioner was not an employee of the city. As the trustee of the plan, the board has full control and management of all assets of the plan, determines the eligibility and rights of any employee as well as the rights of the city under the Act, and is vested with the power to hire and dismiss any system employee and fix employee compensation. Further, the board has adopted and maintained bylaws that govern the system. The board also owes a fiduciary duty to the system's members and beneficiaries to manage the system for the benefit of its members and beneficiaries. Laws 1973, 218:2, IV, V; *see N.H. Retirement System v. Sununu*, 126 N.H. 104, 109 (1985). By contrast, the city has no authority over or responsibility for the plan, the system or the system's employees. In addition, we conclude that the system is not an agent or department of the city. *See Sununu*, 126 N.H. at 110 (holding that State Retirement System is not an agency or department within State's executive branch). That the board is given full control and management over the pension trust and owes a fiduciary duty to manage the system for the benefit of its members and beneficiaries

leads us to conclude that the system was intended to operate as an independent entity, not a municipal agency.

■ The petitioner raises various arguments as to why he should be considered an employee of the city or otherwise eligible to receive benefits under the plan. First, he argues that the board's decision is erroneous because it was based upon the 1987 city referendum, which he asserts was an illegal amendment to the Act. Prior to the referendum, the Act provided that "[t]he city shall appropriate funds for the maintenance of the retirement system, subject to budgetary controls as exercised over other city functions." Laws 1973, 218:2, VI. The petitioner contends, therefore, that the original legislation makes clear that the system was: 1) intended to be a "city function"; and 2) that the city was responsible for paying the system's administrative costs, thereby making him an employee of the city. We disagree. First, while certainly a relevant factor, the receipt of compensation does not necessarily establish the existence of an employer-employee relationship. See 30 C.J.S. Employer-Employee Relationship § 11 (1992). Second, even assuming the city was continuously responsible for bearing the administrative costs of the system, the fact that the board has the ultimate power to choose how to expend those funds undermines the petitioner's argument. See Laws 1973, 218:2, IV; see also Town of Littleton, 138 N.H. at 422.

■ Nor do we agree with the petitioner's argument that the legislature intended the system to be a city function because the board is composed of individuals associated with the city. The majority of the seven board members are not required to be city officials and two of the members cannot be officers or employees of the city. See Laws 1973, 218:2, I. Further, the mayor sits as an ex officio member of the board who can vote only to break a tie. See id. Thus, the board's membership does not establish that the petitioner was an employee of the city.

■ The petitioner also argues that the board's interpretation and application of the plan leads to the conclusion that he was a member of the plan and entitled to receive benefits. He asserts that the board continued to treat system employees as eligible members under the plan entitled to receive benefits, and "grandfathered" him and other system employees into the plan. In construing an ordinance or statute, this court will consider how it has been applied in practice by those trusted with its administration. See Manchester Fire Fighters Ass'n v. Manchester, 112 N.H. 343, 346 (1972). Nevertheless, an agency's interpretation will not be given deference if it is contrary to the express statutory language. See

*Hamby v. Adams,* 117 N.H. 606, 609 (1977). Because we hold that system employees are not "employees of the city" for purposes of the plan, any construction by the board granting those employees membership is incorrect. In addition, because the petitioner was never legally entitled to participate in the plan, the board could not "grandfather" him into it. *Cf. Town of North Hampton v. Sanderson,* 131 N.H. 614, 620-21 (1989).

■ The petitioner further argues that he was an employee of the city because the system and the board are agencies or instrumentalities of the city under 26 U.S.C.A. § 414(d) (Supp. 2001). This section defines a "governmental plan," exempt from certain requirements for favorable tax treatment, as "a plan established and maintained for its employees by ... any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 26 U.S.C.A. § 414(d). The petitioner asserts that the system and the board are agencies or instrumentalities of the city because the system is maintained by the city through the board for the benefit of city employees. This argument is misplaced. While it may be that the plan fits the definition of "governmental plan" under section 414 (d), it was not established and maintained by the system for *its* employees. Section 414(d) does not transform a system employee into a city employee.

Having concluded that the petitioner was not a city employee, we turn to the petitioner's argument that the board should be estopped from denying him benefits because its conduct led him to believe he was eligible to participate in the plan. Specifically, he contends that the board led him to believe he was eligible to receive plan benefits even if he was not an employee of the city because it did not create a separate retirement plan, allowed him to continue contributing to the plan and never told him he could not participate in the plan. As a result, he argues that the board's conduct induced him to believe that he was eligible to receive benefits under the plan, and he relied upon that representation when he elected to retire.

■ Equitable estoppel "serves to forbid one to speak against his own act, representations, or commitments to the injury of one to whom they were directed and who reasonably relied thereon." *Town of Seabrook v. Vachon Management,* 144 N.H. 660, 666 (2000) (quotation omitted). The four necessary elements for estoppel are:

> first, a false representation or concealment of material facts made with knowledge of those facts; second, the party to whom the representation was made must have been ignorant of the truth of the matter; third, the representation must have been

made with the intention of inducing the other party to rely on it; and fourth, the other party must have been induced to rely upon the representation to his or her injury.

*Id.* (quotation omitted). "The burden of proving estoppel is upon the party asserting it, and its existence is a question of fact to be resolved by the trier of fact." *Olszak v. Peerless Ins. Co.,* 119 N.H. 686, 690 (1979). Estoppel rests, in large part, upon the facts and circumstances of the particular case. *See Monadnock School District v. Fitzwilliam,* 105 N.H. 487, 489 (1964).

The petitioner contends that the board falsely represented that he was eligible to participate in the system and did so even after the board was advised that system employees were not employees of the city. First, they continued to allow his contributions to the system. Second, they disregarded counsel's advice regarding the creation of a separate retirement plan for system employees. Third, even as late as 1996, counsel for the board drafted a form by which new employees of the system would acknowledge their ineligibility for retirement benefits "offered by the System to existing employees." Lastly, when Ms. Hughes, a system employee, retired in 1998, she received benefits under the plan.

At least until 1992, when the board for the first time received a legal opinion that system employees were not employees of the city, all indicators supported the petitioner's eligibility to participate in the plan. At that point, doubt as to the petitioner's continued participation was first introduced. Whether this doubt rose to the level of alerting the petitioner to question his eligibility is for the board to determine in the first instance. *See Petition of Support Enforcement Officers,* 147 N.H. 1, 11 (2001).

Although the issue was raised by the petitioner, the board did not address whether it should be estopped from denying the petitioner's pension benefits. Because we conclude that the petitioner's estoppel argument should have been reviewed below, we remand to the board for its consideration, in the first instance, of the petitioner's estoppel argument. *See id.* On remand, the board shall consider all relevant evidence regarding the estoppel issue.

*Vacated and remanded.*

NADEAU and DUGGAN, JJ., concurred; DALIANIS, J., concurred in part and dissented in part.

DALIANIS, J., concurring in part and dissenting in part. I concur with the majority that the petitioner is not an employee of the city of Manchester. Because I believe that the board is not equitably estopped

from denying the petitioner pension benefits, however, I find it unnecessary to remand this case and, therefore, respectfully dissent. I do not dispute the facts outlined in the majority opinion; however, there are additional facts in this case.

The petitioner argues that the board should be estopped from denying him benefits because its conduct led him to believe he was eligible to participate in the plan. I agree with the majority that the board did not specifically address this issue. This court "ordinarily would remand this unresolved issue; however, when a lower tribunal has not addressed a factual issue, but the record reveals that a reasonable fact finder necessarily would reach a certain conclusion, we may decide that issue as a matter of law." *Appeal of Cote*, 139 N.H. 575, 580 (1995). Because we have the same record that was before the board, we are capable of addressing the estoppel issue. Moreover, while we have never directly addressed the issue, it is unclear whether and by what authority the board is vested with the power to grant the petitioner membership in the plan through the use of equitable remedies such as estoppel. *See Appeal of Somersworth School Dist.*, 142 N.H. 837, 841 (1998) (holding that it was erroneous for public employee labor relations board to use equitable remedy to include employee in collective bargaining agreement); *cf. Turco v. Town of Barnstead*, 136 N.H. 256, 264 (1992) (determining that supreme court and superior court have equitable powers and can grant equitable remedies).

As the majority correctly states, equitable estoppel "serves to forbid one to speak against his own act, representations, or commitments to the injury of one to whom they were directed and who reasonably relied thereon." *Town of Seabrook v. Vachon Management*, 144 N.H. 660, 666 (2000) (quotation omitted). The party bringing the estoppel claim, however, must have reasonably relied upon a representation or concealment. *See City of Concord v. Tompkins*, 124 N.H. 463, 467 (1984). "Reliance is unreasonable when the party asserting estoppel, at the time of his or her reliance or at the time of the representation or concealment, knew or should have known that the conduct or representation was either improper, materially incorrect or misleading." *Id.* at 468. Incorporated into the concept of reasonable reliance is the requirement that the party who is asserting estoppel exercise due diligence to learn of the truth of a matter relied upon. *See New Canaan Bank & Trust v. Pfeffer*, 147 N.H. 121, 126 (2001).

Having considered the record, I conclude that the board cannot be estopped from denying the petitioner pension benefits. The board accepted its counsel's opinion that system employees could not be members of the plan and it discussed creating a separate plan for them. The petitioner, who was then serving as the executive director of the system, was aware of

the board's legal counsel's opinions. Nevertheless, with the board's knowledge, he continued contributing to the plan.

As executive director, the petitioner was responsible for, among other things, maintaining records of the board's actions and overseeing and preparing the distribution of meeting minutes. Given the nature of this position, the petitioner was aware that the board accepted the opinion of counsel that system employees were not city employees, that the board was advised to take remedial measures to correct the problem, and that it discussed establishing a separate retirement plan for the employees. While it is certainly arguable that the board's actions in correcting the eligibility issue were questionable, the petitioner cannot use its inaction as grounds for estoppel given his knowledge that he and other system employees were ineligible to participate in the plan. Thus, the petitioner knew or should have known that any representation by the board was misleading in light of its own actions as well as the opinions of its legal counsel. At the least, he should have exercised due diligence to ascertain whether he and other system staff such as Joanne Hughes were indeed able to participate in the plan.

Even assuming, however, that the petitioner could satisfactorily set forth a claim of equitable estoppel, a party may not assert equitable estoppel to avoid the application of a statute. See Carroll v. City of Philadelphia, 735 A.2d 141, 144 (Pa. Commw. Ct. 1999); see also Bresnahan v. Bass, 562 S.W.2d 385, 390 (Mo. Ct. App. 1978). The rationale underlying this rule is that to allow a party to use estoppel to circumvent the application of a statute would essentially have the effect of amending the statute, particularly where, as here, the party was aware of the applicable statute. See Carroll, 735 A.2d at 144. Because the petitioner was not a member of the plan under the express language of the Act, estoppel cannot be used to create such membership.

Accordingly, I believe that the board did not err in concluding that the petitioner was not eligible to receive pension benefits under the plan. As a result, the petitioner's claim that the board deprived him of a constitutionally protected property interest without due process is without merit since he does not have a property interest in pension benefits under the plan. See Bresnahan, 562 S.W.2d at 391 (plaintiff's due process rights under state and federal constitution not violated when retirement board denied her benefits under retirement plan because she was not member of the retirement system). I would, therefore, affirm the order of the board denying the petitioner pension benefits under the plan for the time he was employed with the system, but order that the board return to the petitioner all of his money, with interest, that he contributed to the plan

during those years of employment. Because the petitioner was vested in his pension while he was employed with the city water works, he is entitled to pension benefits for those years of employment.