Hillsborough-southern judicial district
No. 2006-143

RESIDENTS DEFENDING THEIR HOMES & a.

v.

LONE PINE HUNTERS' CLUB, INC. & a.

Argued: January 5, 2007
Opinion Issued: May 25, 2007

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Bruce W. Felmly & a.* on the brief, and *Mr. Felmly* orally), for the plaintiffs.

*Brown, Olson & Gould, P.C.*, of Concord (*Bryan K. Gould* and *Philip P. Braley* on the brief, and *Mr. Gould* orally), for the defendants.

*Kelly A. Ayotte*, attorney general (*Andrew B. Livernois*, assistant attorney general, by brief), for the State of New Hampshire, as *amicus curiae*.

BRODERICK, C.J. The defendants, Lone Pine Hunters' Club, Inc. (the Club), the Town of Hollis (town) and the Town of Hollis Planning Board (planning board), appeal an order of the Superior Court (*Hampsey*, J.) ruling that RSA chapter 159-B (Supp. 2006) is unconstitutional, granting injunctive relief and remanding the case to the planning board. We vacate and remand.

We begin by summarizing the lengthy procedural background of this case. In June 1966, the Club purchased 118 acres of land in Hollis located in two zoning districts, a residential and agricultural district and a recreational district. Under the Hollis zoning ordinance then in effect, gun clubs and firing ranges were not permitted uses in either zoning district. In September 1966, the Club applied for a building permit to construct an addition to an existing building to facilitate its use of the property as a fish and game club. The Hollis building inspector denied the application because the proposed use was a "new purpose, which is contrary to provisions of [the] zoning ordinance." The building inspector reported to

the Hollis Zoning Board of Adjustment (ZBA) that the Club's application had been denied because the zoning ordinance "does not provide for the establishment of a Fish & Game Club without a variance." Ten days later, three members of the ZBA signed an unaddressed, handwritten note which stated: "It is the opinion of the Board of Adjustment that the building inspector can issue a building permit for the addition to the existing building owned by [the Club] without issuing a variance."

Over the years, several other expansions took place on the property, some with and some without permits or approval from the ZBA or planning board. In 1999, the Hollis zoning ordinance was amended to add "sporting clubs" to the uses permitted by special exception and site plan review in the zoning districts in which the Club operates. In 1999 and again in 2000, the Hollis Board of Selectmen advised the Club in writing of the need to secure a special exception and site plan review in order to make its operations lawful. In August 2000, the Club applied for and received a special exception from the ZBA on the condition that it seek site plan review before the planning board.

The Club appealed to the superior court, which vacated the ZBA's decision, and the case was appealed to this court. In July 2003, we reversed the superior court and upheld the ZBA's decision that the Club did not have the necessary local land use approvals to lawfully operate as a shooting facility as well as its grant of a special exception subject to planning board site plan review. *See Lone Pine Hunters' Club v. Town of Hollis*, 149 N.H. 668 (2003). Following remand, the Club suspended all shooting activities and in June 2004, submitted its application to the planning board for site plan review.

On the advice of town counsel, the planning board concluded that RSA 159-B:4, as amended in May 2004, preempted its authority to enforce the town's zoning ordinances relative to the Club's property and voted to dismiss the Club's application because it lacked jurisdiction. The plaintiffs, a group of citizens owning land surrounding the Club's property, appealed to the superior court arguing, in part, that the Club could not lawfully operate a shooting club absent compliance with the special exception/site plan review process created by the 1999 amendment to the zoning ordinance. In December 2005, the trial court ruled that RSA 159-B:4 divested the planning board of jurisdiction over the Club's site plan application. The court, however, declared the entire statute unconstitutional, enjoined all shooting activities at the Club pending site plan approval and remanded the matter to the planning board. This appeal followed.

RSA chapter 159-B, as amended in 2004, primarily protects existing shooting ranges from liability related to noise. The statute protects owners

of shooting ranges from: (1) noise-based nuisance claims "if the shooting range was established, constructed, or being used on a regular basis as of the date the [claimant] acquired the property," RSA 159-B:5; (2) civil or criminal liability related to noise as well as injunctions based upon noise provided that the shooting range is in compliance with any applicable noise control ordinance in existence "at the time the shooting range was established, was constructed, or began operations," RSA 159-B:1, :2; and (3) agency rules or standards for limiting noise in terms of decibel level, provided that the shooting range is "in compliance with any applicable noise control ordinances in existence at the time when the range was established, was constructed, or began operations," *see* RSA 159-B:6. In addition, the statute protects shooting ranges from the retroactive application of administrative rules, statutes, or ordinances that prohibit or limit the scope of shooting activities previously conducted at the shooting range if the range was "in operation prior to the adoption, enactment, enforcement or proposal of the administrative rule, statute, or ordinance," RSA 159-B:4. It is this latter provision that led the planning board to conclude that it lacked jurisdiction to apply the town's zoning ordinance and site plan regulations to the Club's shooting range because the range had been "in operation," albeit illegally, since 1966, and the special exception ordinance was not in effect until 1999.

On appeal, the Club argues that the planning board is precluded from conducting site plan review because RSA 159-B:4 only requires that the Club's shooting activities have been "in operation" prior to the adoption of the zoning ordinance in question. The plaintiffs argue that the statute must be read to apply only to lawfully operating shooting ranges; otherwise, the statute would exempt illegally operating shooting ranges from state and local control, a result that could not have been intended by the legislature.

"In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Franklin v. Town of Newport*, 151 N.H. 508, 509 (2004). "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." *Id.*

"The law is well established that a nonconforming use is permissible only where it legally exists at the date of the adoption of the zoning ordinance." *Town of North Hampton v. Sanderson*, 131 N.H. 614, 620 (1989). "This rule of law is based on the principle that provisions which except existing uses are intended to favor uses which were both existing and lawful, not to aid users who have succeeded in evading previous restrictions." *Id.* (brackets and quotation omitted); *see Town of Seabrook v. Vachon Management*, 144 N.H. 660, 664 (2000). This reasoning directly

applies to RSA chapter 159-B. We cannot conclude that the statute was intended to shield a use which was illegal, as to do so would reach an unjust result. Accordingly, we hold that the requirement in the statute that an organization's shooting activities have been "in operation" is intended to mean in lawful operation.

Indeed, as the defendants conceded at oral argument before this court, RSA chapter 159-B was not intended to, nor does it by operation of law, make lawful that which was unlawful before the statute was enacted. Rather, the statute is intended to prevent subsequent restrictions of lawful uses. The legislative history likewise establishes that the statute's provisions are intended to apply to lawfully established shooting ranges.

In the report of a hearing held before the Senate Committee on Wildlife and Recreation in March 2004, a summary of testimony received in support of House Bill 1309 states that "RSA 159-B provides an exemption from nuisance actions based on noise from shooting clubs which were in compliance with relevant noise limitations at the time they were *lawfully approved* by the local land use boards of the communities in which they are located." (Emphasis added.) Senator Clegg testified that the protections afforded by the legislation are necessary because "[i]f [shooting ranges] are operating legally and by the regulations that they were provided at the time of their establishment, there is no reason for them to have to leave." Testifying to the meaning of the retroactivity provision now contained in RSA 159-B:4, Executive Councilor David Wheeler explained that the purpose is to prevent towns from prohibiting or limiting the scope of what shooting ranges "are already doing that was legal when they began operation. You can't go back and shut them down with new laws and ordinances."

During floor debate in the senate in April 2004, Senator Sapareto, in moving that HB 1309 ought to pass, explained: "This bill repeals and reenacts RSA 159-B relative to shooting ranges and it provides shooting clubs an exemption from nuisance action based on noise, if they were in compliance with relevant noise limitations *at the time the range was lawfully approved by the local land use boards of the communities in which they operate.*" N.H. S. JOUR. 729 (2004) (emphasis added). He further stated that "House Bill 1309 was modeled after legislation in 38 other states and the bill seeks to protect property rights of these *legally* operating shooting ranges. . . ." *Id.* (emphasis added). Senator Sapareto responded in the affirmative to a question from Senator Cohen whether "[s]ince the bill is aimed at noise . . . if a shooting range is in violation of laws and ordinances other than noise control ordinances, [the] bill allows the state and community to enforce its other laws or ordinances just like it does today." *Id.* at 729-30. In addition, the following exchange occurred:

SENATOR BELOW: ... Senator Sapareto, I thought I heard you say something about if a shooting range was in compliance with noise ordinances at the time it was lawfully ... I think I heard you say the word "lawfully ..."

SENATOR SAPARETO: Right. It is part of the ordinances.

SENATOR BELOW: ... established, then it would be in essence grandfathered. I am a little confused because the current law makes reference to at the time construction of the range was approved, which would suggest a lawful situation, but the language of the bill seems to say "at the time the range was established, was constructed or began operations", which doesn't include the word "approved" or "lawful." But you are saying that the intent is to read that as "lawfully established" or "lawfully began operations"?

SENATOR SAPARETO: Yes Senator, I would assume that the shooting range could not operate until that permit was issued to begin with. When it was first approved.

*Id.* at 730.

The trial court concluded that "the Planning Board's interpretation was correct that, with the amended version of RSA Chapter 159-B in effect, it may not enforce an ordinance creating a special exception that was enacted in 1999 because this ordinance was enacted thirty-three (33) years after [the Club] began its operations." However, because we hold that the statute does not authorize conduct that was illegal, we reverse the trial court's ruling. Furthermore, we note that even if RSA chapter 159-B were held to preempt the town from enforcing the 1999 zoning ordinance that made available a special exception, the statute would not preclude the requirement that the Club obtain a variance, because the town's original zoning ordinance prohibiting the Club's use was enacted years before the Club purchased its property.

In light of our holding, we need not decide whether RSA chapter 159-B is constitutional. Regardless of the constitutionality of the statute, the Club's use of its property is unlawful under the town's zoning ordinance, as it has been since its inception in 1966. *See Lone Pine Hunters' Club*, 149 N.H. at 670-71. Accordingly, the Club must obtain approval from the town, in compliance with the zoning provisions allowing for a special exception coupled with site plan approval, to lawfully operate as a shooting range.

We vacate the trial court's ruling and remand for the trial court to instruct the planning board to conduct site plan review.

*Vacated and remanded.*

DALIANIS and DUGGAN, JJ., concurred.