NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Hillsborough-northern judicial district
Case No. 2023-0538
Citation: Monadnock Rod and Gun Club v. Town of Peterborough, 2024 N.H. 61

MONADNOCK ROD AND GUN CLUB

v.

TOWN OF PETERBOROUGH

Argued: May 29, 2024
Opinion Issued: October 25, 2024

Hockensmith & Dowd, P.C., of Keene (Kelly E. Dowd on the brief and orally), for the plaintiff.

Donahue, Tucker & Ciandella, PLLC, of Portsmouth (Ali Gennaro on the joint brief and orally), for the defendant.

Runyon Law Office, PLLC, of Peterborough (L. Phillips Runyon III on the joint brief), and Shaheen & Gordon, P.A., of Dover (Sean T. O'Connell and Kirsten J. Allen on the joint brief, and Sean T. O'Connell orally), for the intervenors, Scott and Bridgette Perry.

MACDONALD, C.J.

[¶1] After decades of operating its outdoor shooting range in an east-west direction, the plaintiff, Monadnock Rod and Gun Club (Club), reoriented the range to south-north. It did so without site plan approval by the defendant, the Town of Peterborough (Town). The reorientation also encroached on a neighboring property. Subsequently, the Town amended its zoning ordinance to require shooting ranges to be in enclosed, indoor facilities. The primary issues before us are whether the trial court erred in determining that: (1) the Club's shooting range was not a lawful nonconforming use as it existed when the Town amended its zoning ordinance; and (2) state law does not prohibit the enforcement of the amended ordinance. For the reasons that follow, we affirm.

I. Background

[¶2] The following facts are derived from the trial court's order or are otherwise supported by the record. The Club became a New Hampshire voluntary corporation in 1949. Until 2015, the Club operated an outdoor shooting range on its property in the Town. The range was oriented in an east-west direction with a berm on the western edge of the range. Aerial images of the property in 2015 showed that the western berm had been removed. The Club then constructed a shooting range oriented in a south-north direction with a berm at the northern edge of the range. The Club did not apply for site plan review or permits prior to constructing the new range. The range encroached onto abutting property of Scott and Bridgette Perry. The Perrys are intervenors in this case.

[¶3] In 2018, the Perrys notified the New Hampshire Department of Environmental Services (DES) about contamination on their property from the shooting range. The Town issued a cease and desist order against the Club in 2019. Also in 2019, the Town amended its zoning ordinance to require that shooting ranges be in enclosed, indoor facilities.

[¶4] In March 2020, in a separate action, the Superior Court (Anderson, J.) found that the Club had trespassed onto the Perrys' property and awarded them a $648,402 judgment against the Club. In December 2020, in a separate action, the Superior Court (Anderson, J.) granted summary judgment in favor of the Town against the Club for violations of the zoning ordinance arising from the construction of the south-north range. On June 25, 2021, DES issued an administrative order against the Club for various environmental violations related to the range.

[¶5] The events specifically giving rise to this appeal began in September 2021, when the Club applied for site plan review with the planning board for an expanded east-west outdoor shooting range. The planning board asked the Town's code enforcement officer (CEO) to determine whether the proposed

shooting range "is a permitted grandfathered non-conforming use."  In November 2021, the CEO issued an administrative decision concluding that neither the east-west nor the south-north ranges were grandfathered as nonconforming uses.

[¶6] In December 2021, the Club appealed the CEO's decision to the zoning board of adjustment (ZBA).  Following a hearing, the ZBA affirmed the CEO's decision.  The Club unsuccessfully moved for a rehearing of the ZBA's decision.

[¶7] In March 2022, the Club applied to the ZBA for a special exception for its shooting range.  The ZBA held an initial hearing in May and continued the hearing to June.  At the June hearing, on the advice of town counsel, the ZBA denied the Club's application on grounds that it lacked jurisdiction to grant a special exception for an illegal nonconforming use.  The planning board subsequently denied the Club's site plan application because the Club had failed to get the necessary relief from the ZBA.  Thereafter, the Club unsuccessfully moved for rehearing of the ZBA's denial of its special exception application.

[¶8] The Club appealed all three decisions to the superior court: (1) the ZBA's affirmance of the CEO's decision that the Club did not have a lawful nonconforming use; (2) the ZBA's denial of the special exception application; and (3) the planning board's denial of the Club's site plan application.  The Superior Court (Messer, J.) affirmed.  Subsequently, the court denied the Club's motion for reconsideration.  This appeal followed.

II.    Analysis

[¶9] On appeal, the Club argues that: (1) the trial court erred in affirming the ZBA and planning board decisions because those decisions were based upon "an illegal and unconstitutional 'zoning determination' made by the [CEO]"; (2) the ZBA and the trial court "failed to apply the criteria for a change of use pursuant to New London v. Leskiewicz, 110 N.H. 462, 467 (1970)"; (3) the trial court erred in upholding the ZBA's decision that it lacked subject matter jurisdiction to hear the Club's special exception application; (4) the Town's 2019 zoning ordinance amendment requiring shooting ranges to be in enclosed, indoor facilities is preempted by RSA 159:26, I, and RSA chapter 159-B; and (5) section 245-4 of the Town's zoning ordinance "illegally regulates constitutionally protected activity."  (Capitalization and bolding omitted.)

[¶10] This appeal requires us to review the superior court's order in appeals from decisions of the planning board and the ZBA.  "The superior court was obligated to treat the factual findings of both boards as prima facie lawful and reasonable and could not set aside their decisions absent unreasonableness or an identified error of law."  Hannigan v. City of Concord,

144 N.H. 68, 70 (1999); see RSA 677:6, :15, V (2016). "We will uphold the superior court's decision unless it is unsupported by the evidence or is legally erroneous." Hannigan, 144 N.H. at 70.

A.  Nonconforming Use

[¶11] Resolution of this appeal turns in large part on whether the Club's reorientation of its shooting range from east-west to south-north is a continuation of a lawful nonconforming use of the property. The Club argues that "there was no change in use, and the continued use of the premises for an outdoor shooting range is grandfathered, regardless of whether sportsmen pointed their firearms in a different direction." We disagree.

[¶12] Nonconforming uses are protected by Part I, Articles 2 and 12 of the New Hampshire Constitution and by RSA 674:19 (2016). See Dartmouth Corp. of Alpha Delta v. Town of Hanover, 169 N.H. 743, 750 (2017). A nonconforming use is a lawful use existing on the land at the time an ordinance prohibiting that use is adopted. Town of Salem v. Wickson, 146 N.H. 328, 330 (2001). The right to maintain nonconforming uses is meant to protect property owners from a retrospective application of zoning ordinances. See Alpha Delta, 169 N.H. at 750. Property owners may continue using and enjoying their property when their uses were lawful prior to the enactment of a zoning ordinance or amendment thereto. See id. Whether a nonconforming use is lawful depends upon the facts existing at the time the change in the zoning ordinance created the nonconforming use. See id. The burden to prove a lawful nonconforming use is on the party asserting that right. Id. at 751.

[¶13] Pursuant to the Town's zoning ordinance, "[w]hen any development or change or expansion of the use of land is proposed, site plan approval is required before any construction, land clearing, building development or change is begun, and before any permits are granted." Peterborough Zoning Ordinance § 233-3 (2017) (PZO). Site plan review is required for projects "that entail the development, change, or expansion of more than two thousand (2,000) square feet of buildings, structures, or parking area, including filling, excavation, grading or clearing of any land." Id. The record supports that in constructing the south-north range, the Club filled, excavated, graded, and/or cleared more than 2,000 square feet of land without first obtaining site plan review and approval from the Town's planning board. Because the Club failed to receive site plan approval for the south-north shooting range, "it was illegal and therefore ineligible to later qualify as a lawful nonconforming use." Town of Seabrook v. Vachon Management, 144 N.H. 660, 664 (2000). "[The] rule of law" — that a nonconforming use is permissible only where it legally exists at the time a zoning ordinance is amended — "is based on the principle that provisions which except existing uses are intended to favor uses which were both existing and lawful, not to aid users who have succeeded in evading

4

previous restrictions." Residents Defending Their Homes v. Lone Pine Hunters' Club, 155 N.H. 486, 488 (2007) (quotation omitted).

[¶14] In short, the record establishes that when the Town amended the zoning ordinance in 2019 to require shooting ranges to be in an enclosed, indoor facility, the Club's south-north range was an unlawful use. Thus, this is not a case where an existing, lawful nonconforming use was abandoned after the enactment of an ordinance rendered the use nonconforming. See Lawlor v. Town of Salem, 116 N.H. 61, 62-63 (1976). Nor is it a case where an existing, lawful nonconforming use was changed beyond its original nature and purpose after the enactment of an ordinance rendered the use nonconforming. See Leskiewicz, 110 N.H. at 467-68.

[¶15] The Club has the burden to prove that at the time the ordinance was amended in 2019, it maintained a lawful shooting range. See Alpha Delta, 169 N.H. at 751. On this record, the Club has not met its burden. Accordingly, the trial court's decision affirming the ZBA's determination that the Club's shooting range was an illegal nonconforming use was not unsupported by the evidence or legally erroneous. See id. at 750.

B. ZBA Denial of Special Exception Application

[¶16] The Club argues that it was error for the trial court to uphold the ZBA's decision to dismiss the Club's application for a special exception for lack of subject matter jurisdiction.

[¶17] RSA 674:33, IV(a) states:

> A local zoning ordinance may provide that the zoning board of adjustment, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance. All special exceptions shall be made in harmony with the general purpose and intent of the zoning ordinance and shall be in accordance with the general or specific rules contained in the ordinance.

RSA 674:33, IV(a) (Supp. 2023). PZO section 245-30 provides, in part, that "[a]ny use of a property made legally nonconforming by the district provisions of this chapter may be replaced only by a special exception granted by the [ZBA]." PZO § 245-30(A). Because, as discussed above, the Club did not have a lawful nonconforming use at the time the ordinance was amended in 2019, and section 245-30 of the ordinance requires a lawful nonconforming use in order to meet the requirements for a special exception, the ZBA was correct in denying the Club's special exception application. Although the ZBA denied the Club's application on jurisdictional grounds, and the trial court affirmed on the same grounds, we conclude that the decision is more accurately characterized as one on the merits under section 245-30 of the ordinance. Therefore, we

5

uphold on alternative grounds the trial court's conclusion that the ZBA did not act unlawfully or unreasonably in denying the Club's special exception request. See Sherryland v. Snuffer, 150 N.H. 262, 267 (2003) ("When a trial court reaches the correct result, but on mistaken grounds, this court will sustain the decision if there are valid alternative grounds to support it.").

### C. RSA 159:26 and RSA Chapter 159-B

[¶18] The Club argues that the 2019 zoning ordinance amendment requiring shooting ranges be in an enclosed, indoor facility is unlawful because it is preempted by both RSA 159:26, I, and RSA chapter 159-B. The Club, therefore, asserts that its shooting range "is not subject to zoning regulations." We disagree.

[¶19] Resolution of this issue requires us to engage in statutory interpretation. We review the trial court's statutory interpretation de novo. St. Onge v. Oberten, LLC, 174 N.H. 393, 395 (2021). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We give effect to every word of a statute whenever possible and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We also construe all parts of a statute together to effectuate its overall purpose. Id. However, we do not construe statutes in isolation; instead, we attempt to construe them in harmony with the overall statutory scheme. Id.

[¶20] We begin with the plain language of the statutes at issue. The statutory section the Club relies on is RSA 159:26, which is captioned "Firearms, Ammunition, and Knives; Authority of the State." (Bolding omitted.) Paragraph I provides:

> To the extent consistent with federal law, the state of New Hampshire shall have authority and jurisdiction over the sale, purchase, ownership, use, possession, transportation, licensing, permitting, taxation, or other matter pertaining to firearms, firearms components, ammunition, firearms supplies, or knives in the state. Except as otherwise specifically provided by statute, no ordinance or regulation of a political subdivision may regulate the sale, purchase, ownership, use, possession, transportation, licensing, permitting, taxation, or other matter pertaining to firearms, firearms components, ammunition, or firearms supplies in the state. Nothing in this section shall be construed as affecting a political subdivision's right to adopt zoning ordinances for the purpose of regulating firearms or knives businesses in the same manner as other businesses or to take any action allowed under RSA 207:59.

6

RSA 159:26, I (2023). Paragraph II, in turn, provides in relevant part that "all municipal ordinances and regulations not authorized under paragraph I" are declared "null and void." RSA 159:26, II (2023). Taken as a whole, this statute reflects the "long established principle under our law that towns are but subdivisions of the State and have only the powers the State grants to them." Piper v. Meredith, 110 N.H. 291, 295 (1970) (quotation omitted).

[¶21] That the legislature has not delegated any authority to municipalities with respect to the subject matter set forth in RSA 159:26, I, is of no relevance to this case. The plain language of the statute relates to "firearms, firearms components, ammunition, firearms supplies, or knives in the state." RSA 159:26, I. This case involves the Town's authority to enforce its land use regulations with respect to a shooting range. RSA 159:26, I, does not address shooting ranges. Had the legislature intended to bring shooting ranges within the scope of RSA 159:26, it could have said so specifically. See St. Onge, 174 N.H. at 395 ("[w]e . . . will not . . . add language that the legislature did not see fit to include"). That it did not makes sense inasmuch as a nearly adjacent statutory chapter, RSA 159-B, captioned "Shooting Ranges," addresses that subject matter. (Capitalization and bolding omitted.)

[¶22] The Club's arguments with respect to RSA chapter 159-B also fail, but for a different reason. In contrast to RSA 159:26, this chapter contains no provision reserving all regulatory authority over shooting ranges to the State. Rather, it contains various provisions granting owners, operators, and users of shooting ranges immunity from civil and criminal liability in certain circumstances. See RSA 159-B:1, :2, :5 (2023). There is nothing in this statute generally prohibiting municipalities from enforcing otherwise applicable land use regulations with respect to shooting ranges.

[¶23] However, RSA chapter 159-B does contain a provision specifically prohibiting the retroactive application of enacted ordinances and administrative rules against shooting ranges. RSA 159-B:4 provides:

> No administrative rule, statute, or ordinance adopted, enacted, or proposed by the state of New Hampshire or its political subdivisions shall be applied retroactively to prohibit or limit the scope of the shooting activities previously conducted at a shooting range, which was in operation prior to the adoption, enactment, enforcement, or proposal of the administrative rule, statute, or ordinance.

RSA 159-B:4 (2023). Based on our previous interpretation of RSA 159-B:4, the statute does not prevent the 2019 zoning ordinance amendment requiring shooting ranges to be in an enclosed, indoor facility from being applied to the Club's shooting range. See Residents Defending Their Homes, 155 N.H. at 489. We concluded that "the requirement in the statute that an organization's shooting activities have been 'in operation' is intended to mean in lawful

7

operation." Id. (emphasis added).  As discussed above, at the time the ordinance was amended, the Club's shooting range was not in lawful operation. Therefore, RSA 159-B:4 does not prevent the Town from applying the amended ordinance against the Club.

### D.  Constitutional Arguments

[¶24] The Club argues that the PZO's ban on outdoor shooting ranges violates the Second Amendment to the United States Constitution and Part I, Article 2-a of the New Hampshire Constitution.  The Town asserts that the Club's argument is not preserved.  We agree with the Town.

[¶25] The Club's three appeals to the superior court did not raise any Second Amendment-related arguments.  The trial court consolidated the cases into the present case.  The Club filed a trial memorandum making no Second Amendment-related arguments.  The court held a final hearing at which the Club did not raise any Second Amendment-related arguments.  Following the final hearing, the court ordered the parties to submit additional memoranda of law specifically addressing whether section 245-4 of the ordinance is legal under RSA 159:26.  In its responsive memorandum, the Club argued for the first time that the ordinance discriminates against shooting ranges and thus violates the Second Amendment to the Federal Constitution and Part I, Article 2-a of the New Hampshire Constitution.  In its order, the trial court declined to address the Club's argument, reasoning that it was not timely raised.

[¶26] As a general rule, parties must raise issues "at the earliest possible time, because trial forums should have a full opportunity to come to sound conclusions and to correct claimed errors in the first instance."  In the Matter of Peirano & Larsen, 155 N.H. 738, 744 (2007) (quotation omitted).  On the record before us, we cannot conclude that the Club raised its Second Amendment-related arguments at the earliest possible time.  See O'Hearne v. McClammer, 163 N.H. 430, 439 (2012) (concluding that an issue first raised in a post-trial response to an objection to a motion for reconsideration was not timely). Therefore, the Club's constitutional arguments are unpreserved.

[¶27] We have considered the Club's remaining arguments, and have concluded that they do not warrant further discussion.  See Vogel v. Vogel, 137 N.H. 321, 322 (1993).  Accordingly, we affirm the trial court's order.

Affirmed.

BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.