NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Grafton
No. 2016-0304


DARTMOUTH CORPORATION OF ALPHA DELTA

v.

TOWN OF HANOVER

Argued: February 16, 2017
Opinion Issued: April 11, 2017


     Cole Associates Civil Law, PLLC, of Lebanon (Carolyn K. Cole on the brief and orally), for the plaintiff.


     Mitchell Municipal Group, P.A., of Laconia (Laura Spector-Morgan on the brief and orally), for the defendant.


     DALIANIS, C.J. The plaintiff, Dartmouth Corporation of Alpha Delta (Alpha Delta), appeals an order of the Superior Court (MacLeod, J.) affirming the decision of the Zoning Board of Adjustment (ZBA) for the defendant, the Town of Hanover (Town), that the use of Alpha Delta's property at 9 East Wheelock Street (the property) violates the Town's zoning ordinance. We affirm.

I.  Background

The relevant facts follow.  Alpha Delta has been a fraternity for students at Dartmouth College (College) since the 1840s.  According to the printout from Alpha Delta's website included in the certified record, in 1846 the installation of the national organization of Alpha Delta Phi took place in a College professor's office.  The fraternity subsequently changed its name to Alpha Delta, "to symbolize the return to the literary traditions, which were purely Dartmouth in nature."  The fraternity "set up operations in Dartmouth Hall until 1911, when a new house was built to the west of the College Green."  In 1920, Alpha Delta sold that house and built its current structure, which it has used continuously since as housing for approximately 18-22 College undergraduate students who are members of the fraternity.

In 1931, the Town enacted its first zoning ordinance.  At that time, Alpha Delta's property was located in the "Educational District" in which an "[e]ducational use, or dormitory . . . incidental to and controlled by an educational institution" was permitted as of right.  Between 1931 and the mid-1970s, the property was located in various zoning districts where its use by Alpha Delta as a fraternity was allowed as of right.

In 1976, the Town enacted its current zoning ordinance, under which the property is located within the "Institution" district.  A student residence in the Institution district is allowed only by special exception.  The ordinance defines a "student residence" in the Institution district as "[a] building designed for and occupied by students and operated in conjunction with another institutional use, which may include individual living units with social rooms and kitchen facilities for any number of students."  Alpha Delta has never sought a special exception for the use of its property.

On April 13, 2015, the College notified Alpha Delta by letter that, due to the fraternity's violation of the school's standards of conduct, it had revoked recognition of the fraternity as a student organization.  The College found that over two nights in November 2014, during a time when the fraternity was under suspension by the College, 11 new members of the fraternity were branded with the Alpha Delta fraternity letters, which had "caused physical harm and . . . a subsequent threat to [the members'] continuing safety."  The College also found that the practice of branding new members "is an overtly condoned and long-standing practice of the organization."  The letter stated that "derecognition" revoked the following privileges:  "recruitment of Dartmouth College undergraduates; recognition as a 'college approved' residential facility; use of College facilities or resources; participation in any College activities such as intramurals; and provision of insurance coverage."

In addition, the College notified Alpha Delta that it would be removed from the College's rooming system under which student room rents are paid

through the College, and would no longer be under the jurisdiction or protection of the College's department of safety and security. The letter stated that "[a]s the Alpha Delta chapter will no longer be recognized by the College as a student organization . . . , the [Town] zoning requirements are likely to apply differently." The College stated that it would "notify the [Town] that Alpha Delta no longer has a relationship with Dartmouth College" and that it was the College's "understanding that under the Town zoning ordinance no more than three unrelated people will be allowed to reside on the property."

On April 23, the Town's zoning administrator notified Alpha Delta by letter of its decision that, because the College had derecognized Alpha Delta, Alpha Delta's use of the property violated the zoning ordinance. The letter stated:

> The Adopted Zoning Ordinance requires that student residences in the "I" Institution zoning district be operated in conjunction with another institutional use. . . . Because it has been derecognized by Dartmouth College, the facility is no longer operated in conjunction with an institutional use. The continued use of the property as a residence is therefore a violation of the zoning ordinance.

Accordingly, the zoning administrator informed Alpha Delta that "[t]he continued occupancy of the property [by at least 18 individuals] must cease immediately."

On April 29, Alpha Delta appealed the zoning administrator's decision to the ZBA. Prior to the hearing, the College submitted a letter to the ZBA explaining that "[a]s a result of its derecognition, the Alpha Delta organization no longer has any official status relative to Dartmouth College and the College's relationship to [Alpha Delta] . . . is no different from its relationship to any other Hanover property owner." The letter further explained that "[a]ll . . . College services to [the property] that could be terminated consistent with safety and student welfare have already been terminated," including "routine safety checks or walk-throughs of the property" by the College's department of safety and security. Other services were in the process of being terminated, including Internet service provided by the College and the property's fire alarm connection to the Town's police and fire departments through the College's "dialer system." (Quotation omitted.) In addition, the letter stated that "Alpha Delta is no longer part of the student residential life system."

Following a hearing, the ZBA issued a written decision affirming the zoning administrator's determination that Alpha Delta's use of its property as a student residence violated the zoning ordinance. The ZBA rejected Alpha Delta's argument that, to the extent the zoning administrator had adopted recognition/derecognition status as a zoning requirement, Alpha Delta should

3

be considered "grandfathered" from such a requirement because the existence and nature of recognition by the College had varied before the zoning ordinance was adopted. The ZBA explained that Alpha Delta's argument "misconstrues the nature of the Zoning Administrator's finding of a violation." The ZBA stated:

> The Zoning Administrator did **not** adopt a private institution's 'recognition' standards as part of the Zoning Ordinance. Rather she (and this Board) have considered the **facts** surrounding this particular instance of the **College's** action of 'de-recognition' to determine whether or not those facts show that [Alpha Delta's] use of its property continues to meet a voter-approved **Town** requirement which unarguably **is** contained in the Ordinance – namely the requirement that a student residence in the "I" district must be "operated in conjunction with another institutional use."

The ZBA concluded that, because Alpha Delta "failed to present any evidence that the fraternity ever operated in a manner which was not 'in conjunction with' [the] College, prior to the adoption of that zoning requirement," Alpha Delta did not sustain "its burden of showing that its property is lawfully nonconforming."

In addition, the ZBA rejected Alpha Delta's argument that the "in conjunction with" requirement was met as long as the residents in the fraternity's building are all students of the College. The ZBA considered that other zoning districts allow "family" dwelling units "whose residents are also all, or primarily, [College] students, but where the property has no ties at all to the College." Unlike the Institution district that allows a student residence for "any number of students," the "family" dwelling units are restricted to no more than three unrelated persons. Given those different restrictions, the ZBA reasoned that "fundamental health and safety concerns validly justify the disparate treatment of the number of unrelated persons living in a 'family' dwelling unit—by contrast with a 'Student Residence'—even though both types of residences may be occupied by [College] students."

Thus, recognizing that "[t]he phrase 'in conjunction with another institutional use' certainly has to have **some** meaning," the ZBA concluded that the purpose of the requirement was to address health and safety concerns. The ZBA reasoned that

> [i]t was rational and reasonable for the voters of Hanover, in enacting the Zoning Ordinance, to consider that students in a 'student residence' which is 'operated in conjunction with another institutional use' will potentially have their health and safety overseen to some degree by that other institution (in this case by

4

Dartmouth), whereas students residing elsewhere do not benefit from that same protection.

The ZBA found that, as a result of derecognition, Alpha Delta had lost all health and safety oversight by the College, including that Alpha Delta was no longer recognized as a College-approved residential facility and was no longer "under the jurisdiction or protection" of the College's department of safety and security. Accordingly, the ZBA concluded that Alpha Delta's property was no longer "operated in conjunction with another institutional use" and its use of the property as a student residence violated the zoning ordinance.

After the ZBA denied its request for rehearing, Alpha Delta appealed to the superior court. Following a hearing, the trial court affirmed the ZBA's decision. The court rejected Alpha Delta's assertion "that it is grandfathered from the 'operated in conjunction with another institutional use' requirement . . . simply because it has used [the property] as a student residence continuously since prior to the enactment of the Ordinance." The trial court reasoned that

> [t]he issue is not . . . whether Alpha Delta's use of the property to house [College] students is grandfathered. Rather, the issue is whether its use of the property in a manner that is not "in conjunction with another institutional use" is grandfathered. In order to prove that it was grandfathered from the "in conjunction with" requirement, Alpha Delta, therefore, needed to show that it operated [the property] in a manner that was not "in conjunction with another institutional use" at the time the "in conjunction with" requirement was adopted.

Concluding that the record supported the ZBA's finding that Alpha Delta "failed to present any evidence that the fraternity ever operated in a manner which was not 'in conjunction with' [the] College, prior to the adoption of that zoning requirement," the trial court upheld the ZBA's decision as "neither legally erroneous nor unreasonable." (Quotation omitted.)

The trial court also disagreed with Alpha Delta's assertion that because "'the only people who reside at [the property] are and have been [College] students currently attending [the] College, and the only people who can belong to the Corporation and participate in operating the property are [College] alumni,'" the ZBA erred in its interpretation of the "in conjunction with another institutional use" requirement. Considering the plain meaning of the word "conjunction" and interpreting the phrase "in conjunction with" in the context of the zoning ordinance as a whole, the court agreed with the ZBA that the purpose of the requirement "was to ensure that a student residence maintain the proper relationship to, or association with, the College," including "health and safety oversight by the College." The trial court found that there "is more

5

than sufficient evidence" to support the ZBA's finding that the potential for health and safety oversight by the College has been eliminated as a result of derecognition. The court also found that Alpha Delta "offered <u>no</u> evidence of any association or relationship with the College following derecognition apart from the fact that the residents of [the property] are . . . College students." This appeal followed.

II. Analysis

Judicial review of zoning cases is limited. <u>Greene v. Town of Deering</u>, 151 N.H. 795, 797 (2005). The party seeking to set aside a zoning board of adjustment's decision has the burden to show that it is unlawful or unreasonable. <u>Id</u>. We will uphold the trial court's decision on appeal unless it is unsupported by the evidence or legally erroneous. <u>Lone Pine Hunters' Club v. Town of Hollis</u>, 149 N.H. 668, 669 (2003).

For its part, the trial court, in reviewing the decision of a zoning board of adjustment, is limited to a determination of whether, on the balance of the probabilities, the decision was unlawful or unreasonable. RSA 677:6 (2016); <u>see</u> <u>Lone Pine Hunters' Club</u>, 149 N.H. at 669-70. To the extent the zoning board made findings upon questions of fact properly before the court, those findings are deemed <u>prima</u> <u>facie</u> lawful and reasonable. <u>Lone Pine Hunters' Club</u>, 149 N.H. at 670; <u>see</u> RSA 677:6. The review by the trial court is not to determine whether it agrees with the zoning board's findings, but to determine whether there is evidence upon which they could have been reasonably based. <u>Lone Pine Hunters' Club</u>, 149 N.H. at 670.

On appeal, Alpha Delta argues that the trial court erred by: (1) finding Alpha Delta in violation of the zoning ordinance because its property, "as a matter of law is 'grandfathered' and not a 'Student Residence' as that term is defined in" the ordinance; and (2) affirming the ZBA's interpretation of the phrase "in conjunction with" to mean "the <u>potential</u> for health and safety oversight by that other institution."

A. Nonconforming Uses

A nonconforming use is a lawful use existing since prior to the adoption of a zoning ordinance prohibiting such use, and that does not conform to the requirements of the ordinance. <u>See</u> <u>Town of Salem v. Wickson</u>, 146 N.H. 328, 330 (2001); <u>see also</u> <u>Hurley v. Town of Hollis</u>, 143 N.H. 567, 571 (1999) (explaining that "a zoning ordinance does not apply to structures or uses of the property that existed at the time the ordinance was enacted" (quotation and brackets omitted)). "The right to maintain nonconforming uses is meant to protect property owners from a retrospective application of zoning ordinances, so that property owners may continue using and enjoying their property when their uses were lawful prior to the enactment of a zoning ordinance or

6

amendment thereto." New London Land Use Assoc. v. New London Zoning Board, 130 N.H. 510, 516 (1988). The creation of a lawful nonconforming use depends upon the facts existing at the time the change in the zoning ordinance created the nonconforming use. Wickson, 146 N.H. at 330-31.

Nonconforming uses are protected by RSA 674:19 (2016) and by Part I, Articles 2 and 12 of the New Hampshire Constitution. Ray's Stateline Market v. Town of Pelham, 140 N.H. 139, 143 (1995); see Town of Seabrook v. Vachon Management, 144 N.H. 660, 664 (2000) (stating that the State Constitution and state statute "both recognize that an established use of land is not disturbed by a subsequent land restriction"). "To qualify for such protection, a nonconforming use must lawfully exist at the time the restriction is adopted and have continually existed since that time." Vachon Management, 144 N.H. at 664. The burden to prove a lawful nonconforming use is on the party asserting that right. See Town of Wolfeboro v. Smith, 131 N.H. 449, 457 (1989).

Alpha Delta argues that because its "use of its property as a fraternity pre-existed all zoning ordinances and [Alpha Delta] has never sought or obtained a Special Exception to operate as a Student Residence," it has proven that its use "legally existed prior to the adoption of a zoning provision prohibiting the use." Therefore, Alpha Delta asserts, it "uses its property as a lawful non-conforming fraternity" not subject to the current zoning restrictions "that call for a Student Residence to operate in conjunction with another institutional use."

As applied to a student residence in the Institution district, the zoning ordinance imposes three separate use requirements. First, the ordinance requires that a student residence operate "in conjunction with another institutional use" in the same district. Second, the ordinance requires that a student residence obtain a special exception. Third, as with all uses in the Institution district, a student residence "must relate to the uses of the institution having ownership interest in land in the district."

Both the ZBA and the trial court assumed, and the parties do not dispute, that Alpha Delta's use of the property as a student residence was lawful without a special exception because Alpha Delta was using its property as a student residence before the special exception requirement was enacted. Thus, in 1976, when the current ordinance was enacted, Alpha Delta's use of its property was lawfully nonconforming with respect to the special exception requirement.

Both the ZBA and the trial court found that Alpha Delta failed to establish that it was operating in a manner not in conjunction with the College in 1976 when the "in conjunction with" requirement was enacted. Alpha Delta does not challenge this finding on appeal. Thus, when the amended zoning

7

ordinance was enacted, Alpha Delta's use of its property as a student residence was <u>conforming</u> with respect to the requirement that the residence be operated in conjunction with the College.

Despite acknowledging that its use of the property is, and always has been, a student residence housing approximately 18-22 College undergraduate students who are members of the fraternity, Alpha Delta, nonetheless, argues that "as a matter of law, [its] property is 'grandfathered' and not a student residence as that term is defined in . . . the amended zoning ordinance." (Capitalization and bolding omitted.) According to Alpha Delta, such use "comes into existence only via the application for and actual issuance of a special exception" and, therefore, Alpha Delta's use is lawfully nonconforming because it "has never sought nor obtained a special exception to operate as a student residence." (Capitalization and bolding omitted.) However, Alpha Delta's arguments—that in order to be a student residence it was required to obtain a special exception—are based upon a faulty assumption. As set forth above, Alpha Delta's use of its property was "grandfathered" in that it was relieved of the requirement that a student residence obtain a special exception.

In addition, those arguments misconstrue the basis of the trial court's decision. The issue before both the ZBA and the trial court was not whether Alpha Delta's lack of a special exception rendered its use as a student residence nonconforming; it is undisputed that Alpha Delta is lawfully nonconforming with respect to the special exception requirement. Rather, the issue was whether Alpha Delta's use as a student residence, following the College's derecognition of the fraternity in 2015, continued to comply with the zoning requirement that a student residence in the Institution district operate in conjunction with another institutional use.

Citing a 2014 zoning board decision regarding the Kappa Kappa Kappa fraternity (Tri-Kap), Alpha Delta argues that, because the ZBA in that case "ruled that a lawful non-conforming fraternity can never be a student residence as defined in [the ordinance] unless the landowner has obtained a special exception," the ZBA is bound by <u>stare</u> <u>decisis</u> to reach the same conclusion in this case. (Capitalization and bolding omitted.) According to Alpha Delta, the Tri-Kap decision supports its position that the "in conjunction with" language "<u>only</u> applies to those property owners who have been granted a Special Exception to operate as a 'Student Residence.'" Assuming, without deciding, that the ZBA is bound by the principle of <u>stare</u> <u>decisis</u>, we disagree that the Tri-Kap decision is relevant to this case.

The Tri-Kap decision supports our construction of the zoning ordinance as applied to Alpha Delta. In Tri-Kap, the ZBA found that Tri-Kap's use of its property as a student residence was a lawful nonconforming use under the zoning ordinance because, like Alpha Delta, it existed as a student residence prior to the adoption of the requirement that a student residence obtain a

special exception.  Moreover, the issue in Tri-Kap had nothing to do with the "in conjunction with" language in the ordinance.  Rather, the decision was about whether Tri-Kap needed a variance or a special exception to expand the footprint of its building and to expand its use.  Contrary to Alpha Delta's assertions, the Tri-Kap decision does not stand for the proposition that a special exception must be obtained in order for a fraternity to be a student residence under the zoning ordinance and thereby become subject to the "in conjunction with" requirement.

We are likewise not persuaded by the other zoning board decisions cited by Alpha Delta in support of its argument that the ZBA should be "estopped" from determining that the zoning ordinance requires that Alpha Delta "operate a Student Residence in conjunction with the College to allow the continued use of its Property."  None of those decisions address the "in conjunction with" language and, therefore, are not relevant to the issue before us.  To the extent that Alpha Delta is arguing that these zoning decisions are proof of selective enforcement by the Town of its zoning ordinance, we agree with the ZBA that "[t]he mere fact that a Town may have been lax in its enforcement in the past does not prohibit enforcement in the present."  See Anderson v. Motorsports Holdings, 155 N.H. 491, 499 (2007).

Finally, Alpha Delta contends that it did not "waive its rights as a lawful, nonconforming use simply by any voluntary association with Dartmouth College."  (Capitalization and bolding omitted.)  Alpha Delta argues that "[t]he ZBA, affirmed by the trial court, suggested that by 'opting into' the College's stricter post-1980's regulatory regime, [Alpha Delta] in effect waived all of the grandfathering rights it had possessed since the 1920s, because [Alpha Delta] did not present evidence that it had not operated 'in conjunction with' the College prior to 1931."  We disagree with both Alpha Delta's characterization of the ZBA's finding and its interpretation of the legal principles applicable to preexisting nonconforming uses.

A lawful nonconforming use is a use in fact existing on the land at the time of adoption of the ordinance.  See New London Land Use Assoc., 130 N.H. at 515-16.  As the trial court correctly stated, "In order to prove that it was grandfathered from the 'in conjunction with' requirement, Alpha Delta . . . needed to show that it operated [the property] in a manner that was not 'in conjunction with another institutional use' at the time the 'in conjunction with' requirement was adopted."  The ZBA found, and the trial court affirmed, that Alpha Delta "failed to present any evidence that the fraternity ever operated in a manner which was not 'in conjunction with' [the] College, prior to the adoption of that zoning requirement."  (Emphasis added.)  Because Alpha Delta was lawfully operating a student residence "in conjunction with" the College in 1976, it was not until the College derecognized the fraternity in 2015 that Alpha Delta's use of the property violated the Town's zoning requirement that a student residence operate in conjunction with another institutional use.

9

### B. In Conjunction With Another Institutional Use

Alpha Delta next argues that the ZBA's "interpretation that the phrase 'in conjunction with' means . . . 'the <u>potential</u> for health and safety oversight by that other institution' is unconstitutionally vague, speculative, legally erroneous, contrary to the plain language of the ordinance, . . . and [is] arbitrary and capricious." Alpha Delta asserts that the ZBA "discovered" the meaning of the words "in conjunction with" "in order to justify that [Alpha Delta] was in violation of the Ordinance." (Quotation omitted.)

We observe, however, that the interpretation of a zoning ordinance is a question of law, which we review <u>de novo</u>. <u>Anderson</u>, 155 N.H. at 494. "Because the traditional rules of statutory construction generally govern our review, the words and phrases of an ordinance should be construed according to the common and approved usage of the language." <u>Id</u>. at 494-95. "When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent." <u>Id</u>. at 495. "Moreover, we will not guess what the drafters of the ordinance might have intended, or add words that they did not see fit to include." <u>Id</u>. The meaning of a zoning ordinance is determined "from its construction as a whole, not by construing isolated words or phrases." <u>Feins v. Town of Wilmot</u>, 154 N.H. 715, 719 (2007) (quotation omitted).

The phrase "in conjunction with" is not defined in the zoning ordinance and, therefore, we ascribe to the words their plain and ordinary meaning. <u>See Appeal of Town of Nottingham</u>, 153 N.H. 539, 553 (2006). "Conjunction" is defined as "the act of conjoining or state of being conjoined: UNION, ASSOCIATION, COMBINATION." <u>Webster's Third New International Dictionary</u> 480 (unabridged ed. 2002). Thus, under the unambiguous meaning of the word "conjunction," Alpha Delta must have some union, association or combination with the College.

The ZBA found that "in fact, [Alpha Delta] has failed to present any evidence contradicting the College Counsel's statement that 'the College's relationship to [Alpha Delta] . . . is now no different from its relationship to any other Hanover property owner.'" (Brackets omitted.) The trial court affirmed the ZBA's determination, and concluded that "Alpha Delta offered <u>no</u> evidence of any association or relationship with the College following derecognition." We agree that the record supports the trial court's affirmance of the ZBA's finding that upon the College's revocation of its recognition of Alpha Delta as a student organization, Alpha Delta has no association with the College and thus is no longer "operating in conjunction with" the College.

Based upon our review of the relevant law and the record before us, we hold that the trial court's decision was neither unsupported by the evidence nor legally erroneous. Accordingly, we affirm the trial court's determination

that the use of Alpha Delta's property as a student residence violates the Town's zoning ordinance.  To the extent that Alpha Delta's brief raises additional arguments, we conclude that they warrant no further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

HICKS, CONBOY, and LYNN, JJ., concurred.