NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2017-0634

NEW HAMPSHIRE ALPHA OF SAE TRUST

v.

TOWN OF HANOVER

Argued:  September 27, 2018
Opinion Issued:  March 26, 2019

Cole Associates Civil Law, PLLC, of Lebanon (Carolyn K. Cole on the brief and orally), for the plaintiff.

Mitchell Municipal Group, P.A., of Laconia (Laura Spector-Morgan on the brief and orally), for the defendant.

Myers Associates, PLLC, of Lebanon (Howard Myers on the brief), and Manley Burke, LPA, of Cincinnati, Ohio (Sean P. Callan and Patrick K. Hogan on the brief), for Phi Delta Alpha Corporation, Zeta Association of Psi Upsilon, and Trustees of Alpha Omega Chapter of Beta Theta Pi Fraternity, as amici curiae.

LYNN, C.J.  The plaintiff, New Hampshire Alpha of SAE Trust (SAE), appeals an order of the Superior Court (MacLeod, J.) upholding a decision by the Zoning Board of Adjustment (ZBA) for the defendant, Town of Hanover (Town), that the use of SAE's property at 38 College Street (the property) violates the Town's zoning ordinance.  We affirm in part, vacate in part, and remand.

I

The following facts are derived from either the trial court's order or the certified record.  SAE built the property in the late 1920s specifically to accommodate the Dartmouth College (College) chapter of the Sigma Alpha Epsilon fraternity.  Fraternity members have continuously occupied the property since 1931.  SAE's use of the property as a student residence was permitted as of right from the time the Town adopted its first zoning ordinance in 1931 until the ordinance was amended in 1976.

Since the 1976 amendment, the property has been zoned in the "'I' Institution" district.  Because the purpose of the district is to "permit or allow institutions to use their land for uses related to the purposes of the institutions," all property uses within the district "must relate to the uses of the institutions having ownership interest in land in the district."  Student residences are not permitted as of right, but may be permitted by special exception.  The ordinance defines "Student Residence" as a "building designed for and occupied by students and operated in conjunction with another institutional use."

In February 2016, the College revoked its official recognition of SAE after learning that the national charter of the Dartmouth chapter had been suspended.  As a result, the College no longer recognized the fraternity as a college-approved housing facility or provided insurance coverage.  The College then notified the Town that it no longer recognized the fraternity as a student organization.  In light of the College's derecognition, the zoning administrator informed SAE that its use of the property as a student residence was now violating the zoning ordinance because it was not operating "in conjunction with an institutional use," and, if continued, would subject SAE to daily fines.

SAE appealed to the ZBA, arguing, in part, that its use of the property was a lawful nonconforming use because the property was never operated in conjunction with the College.  In support of its position, SAE submitted several exhibits including affidavits from former fraternity members.  The College did not attend the hearing and no contrary evidence was presented to rebut SAE's claims.  The ZBA found that SAE's use of the property as a student residence was a lawful nonconforming use because it existed prior to the 1976 amendment that added the "in conjunction with another institutional use" requirement.  However, the ZBA noted that "it is conceivable that contrary

evidence could be adduced if a party with standing to request a rehearing (such as the College itself) were to present such evidence." Additionally, before the decision was distributed, a ZBA member urged the zoning administrator to send the decision to the College so that the College would be aware of its "chance to ask for a rehearing."

On May 16, 2016, the College requested a rehearing, arguing that "there is abundant evidence" establishing that "SAE operated 'in conjunction with' the College" prior to the 1976 zoning amendment. SAE objected to the College's motion on two grounds: (1) the ZBA member that urged the zoning administrator to contact the College was biased against SAE; and (2) the College did not have standing to request a rehearing because it did not participate in the initial proceedings. The ZBA did not address SAE's objections prior to granting the rehearing. Instead, the ZBA explained in its final decision that: (1) any potential bias by the ZBA member was moot because he did not participate in the rehearing; (2) it had broad discretion to grant the College's request; and (3) the College was an interested party.

During the rehearing, the College produced evidence that it provided fire safety services to fraternities from 1949 to 1973. The College also produced evidence that it established an independent governing board for fraternities in 1971 and appointed a business manager for fraternities in 1972. In response, SAE produced evidence that the College did not provide health or safety services to SAE from 1972 to 1976. Likewise, SAE presented evidence that it attempted to maintain independence from the College during this period and was run and managed by SAE members. After weighing the evidence, the ZBA found that the College had "engaged in appreciable health and oversight activities with regard to the fraternities generally and to [SAE] in particular prior to 1976, especially in the area of fire safety." Ultimately, the ZBA reversed its original decision and denied SAE's administrative appeal.

The ZBA subsequently denied SAE's request for rehearing, and SAE appealed to the superior court. Following a hearing, the trial court affirmed the ZBA's decision. First, the trial court ruled that, based on our recent decision in Dartmouth Corp. of Alpha Delta v. Town of Hanover, 169 N.H. 743 (2017): (1) the issue before it was "not whether SAE's use of the building as a fraternity house was nonconforming with the zoning ordinance, but whether its use of the building as a student residence was nonconforming with the 'in conjunction with' requirement"; (2) the ZBA's interpretation of the "in conjunction with" requirement was not unreasonable or illegal; and (3) the Town's past lax enforcement of the zoning ordinance did not bar enforcement against SAE. The court went on to find "that there was sufficient evidence for the ZBA to reasonably conclude that SAE operated 'in conjunction with' the College prior to" the 1976 zoning amendment, explaining that "it is not for the court to gainsay the ZBA's determination that SAE's evidence was unpersuasive."

Next, the court rejected SAE's claims that the Town violated its equal protection and due process rights "by creating an unconstitutional classification within the Town's Institution district," reasoning that the claim bore no meaningful difference from SAE's selective enforcement claim, which had been disposed of by the Alpha Delta opinion. Similarly, the court ruled that Alpha Delta disposed of SAE's administrative gloss argument because it held the phrase "in conjunction with" to be plain and unambiguous.

The court further reasoned that SAE's claim that the ZBA's decision amounted to a taking was "starkly contradicted by SAE's own claims" that the property "is also 'used as a gathering hall for Fraternity meetings, events, and alumni functions, an academic study space for members of the fraternity and their invited guests, as a venue for alumni reunions and functions, and as a venue for guest speakers and visitors.'" The trial court noted that the ZBA's decision was "limited to 'continued use of the property as a residence.'" The court also rejected SAE's assertion that the ZBA's decision violated its rights to expressive association, noting that "[t]he certified record does not reflect any Town action that would prevent the members of SAE from assembling, either publicly or in the fraternity house, to discuss or publish their views." Finally, the court ruled that the ZBA did not act "in an ultra vires capacity" and deprive SAE of procedural due process in granting the rehearing because: (1) the ZBA has broad statutory authority to hear and decide appeals; and (2) there was no evidence in the record to support the assertion that the ZBA was unduly influenced by the allegedly biased member. SAE's motion to reconsider was denied, and this appeal followed.

II

Our review in zoning cases is limited. Merriam Farm, Inc. v. Town of Surry, 168 N.H. 197, 199 (2015). Factual findings of the ZBA are deemed prima facie lawful and reasonable, and the ZBA's decision will not be set aside by the superior court absent errors of law unless it is persuaded by the balance of probabilities, on the evidence before it, that the ZBA's decision is unlawful or unreasonable. Id.; see RSA 677:6 (2016). We will uphold the superior court's decision unless the evidence does not support it or it is legally erroneous. Merriam Farm, 168 N.H. at 199. The interpretation and application of a statute or ordinance is a question of law, and we review the trial court's ruling on such issues de novo. Id.

First, SAE argues that the zoning ordinance unlawfully delegates the ZBA's authority to the College. In its view, the "in conjunction with" requirement effectively concedes zoning power to the College because the College "reserves the right" to recognize or derecognize a fraternity for any reason it desires. Thus, recognition by the College is the only way for a property to operate "in conjunction with" another institutional use. We acknowledge that if formal recognition by the College were dispositive of the "in

4

conjunction with" requirement, an unconstitutional delegation problem might well exist.  Cf. Fernald v. Bassett, 107 N.H. 282, 284 (1966) (recognizing that a local zoning ordinance that conferred upon a private landowner the authority to grant a special exception to another landowner was an unauthorized delegation of authority).  However, consistent with our longstanding practice, we will not construe a legislative enactment as unconstitutional when it is susceptible to a construction rendering it constitutional.  Duncan v. State, 166 N.H. 630, 637 (2014).  Therefore, we hold that the definition of "in conjunction with" that we adopted in Alpha Delta does not treat recognition by the College as the sole determinant of whether SAE's use of its property complies with the terms of the ordinance.

Relying on the dictionary definition of the word "conjunction," we held in Alpha Delta that the plain and unambiguous meaning of the word, as used in the ordinance, meant that a property's use "must have some union, association or combination with the College."  Alpha Delta, 169 N.H. at 754.  In Alpha Delta, the ZBA found, and the trial court affirmed, that "Alpha Delta offered no evidence of any association or relationship with the College following derecognition."  Id.  We agreed that the record supported the further finding that Alpha Delta was no longer operating "in conjunction with" the College.  Id.  However, it does not follow from our holding in Alpha Delta that formal recognition by the College is the only way that a property's use would operate "in conjunction with" another institutional use in the district.  Rather, the outcome in Alpha Delta was reliant on the facts as they existed in that case.[1]  Thus, in Alpha Delta, we did not have the occasion to address the issue before us today.  Squarely facing that issue now, we conclude that derecognition by the College is merely one factor to be considered by the ZBA when it determines whether the "in conjunction with" requirement has been met.  Accordingly, notwithstanding derecognition, in an appropriate case the ZBA may determine, depending upon all the circumstances, that a fraternity such as SAE continues to use its property "in conjunction with" the College or with another institutional use in the district.  Construing the ordinance in this fashion avoids the issue of any arguable improper delegation of ZBA authority to the College; as so construed, it is clear that the determination of whether the "in conjunction with" requirement is met is controlled by the ZBA, not the College.

The above construction of the ordinance does not aid SAE in this case, however.  In the proceedings before the ZBA, SAE took pains to distance itself from the College and put forth substantial evidence that it wanted no relationship with the College.  Consequently, on the record before it, the ZBA was justified in finding that SAE "offered no evidence of any association or

---

[1] Importantly, in Alpha Delta, the fraternity declined to pursue on appeal its argument before both the ZBA and trial court that, despite derecognition, the mere circumstance of its continuing to function as a place where more than three unrelated students attending the College resided was sufficient to satisfy the "in conjunction with" requirement.  See Alpha Delta, 169 N.H. at 748, 749.

relationship with the College" following derecognition, and thus was no longer operating "in conjunction with" the College.

Next, SAE argues that it does not need to associate itself with the College because it is itself an "Institution" as defined by the ordinance. Table 204.4 of the zoning ordinance defines the "Objective" of the Institution district as follows:

> The chief present land use in the district, and the use that can be expected in the future, is institutional. This use has certain peculiar needs that best can be met by identifying it as a special district. In addition to the normal institutional uses in this area, certain complementary and support facilities are desirable as Special Exceptions. Because of the specialized nature of these institutions, these support and complementary land uses involve a selective list of residential, commercial and public uses which are desirable in such a district providing the necessary safeguards are incorporated. It is the intent of this provision to permit or allow institutions to use their land for uses related to the purposes of the institutions.

The table also contains a list of permitted uses within the district, as well as a list of uses allowed by special exception. The ZBA did not consider whether SAE's use of the property fell within one of these permitted institutional uses because the ZBA concluded that the term "Institution" as used in the zoning ordinance was intended to cover only "major institutions" such as the College, the former Mary Hitchcock Hospital, and certain other entities, and that SAE was not a "major institution." In reaching its decision, the ZBA relied upon language contained in the 1976 amended ordinance, which has not been retained in subsequent versions of the ordinance. That language, moreover, does not limit the scope of institutions to "major institutions." Therefore, the ZBA's finding that SAE did not qualify as an "Institution" was predicated upon its erroneously narrow interpretation of the term "Institution." Accordingly, we vacate the ZBA's ruling on this issue and remand the case to the ZBA for further proceedings consistent with this opinion. See, e.g., Chester Rod & Gun Club v. Town of Chester, 152 N.H. 577, 583 (2005). On remand, if the ZBA finds that SAE is an "Institution," the ZBA should then address SAE's argument that its residential use is allowed. In light of this ruling, we need not consider SAE's claim that the Town has engaged in a taking by restricting SAE's residential use of the property.

SAE further argues that the trial court erred by failing to rule that its equal protection rights were violated by the Town's conduct. According to SAE, the Town created an illegal classification of those fraternal institutions that severed ties with the College before 2015 and those that severed ties after 2015. We agree with both the trial court and the Town that this argument

6

merely recasts SAE's selective enforcement claim, which we already rejected in Alpha Delta. See Alpha Delta, 169 N.H. at 753. The crux of SAE's argument is that "[p]rior to 2015, the Town never enforced Section 902 against a landowner whose fraternity tenant had severed ties" with the College. In fact, SAE directly states: "The Town's selective enforcement of the Zoning Ordinance marked by its 2015 policy change indisputably was conscious and intentional." We squarely addressed the selective enforcement argument in Alpha Delta, holding that "the mere fact that a Town may have been lax in its enforcement in the past does not prohibit enforcement in the present." Id. at 753 (brackets and quotation omitted). SAE has neither asked us to revisit our holding in Alpha Delta, nor has it sought to distinguish that case, and we see no reason to depart from the decision reached therein.

SAE also contends that the ZBA, and in turn the trial court, erred by "failing to apply the correct legal timeframe of reference for nonconforming uses." Specifically, SAE argues that because the College did not present documentary evidence that the fraternity associated itself with the College between 1972 and 1976, the ZBA was required to find that SAE did not operate "in conjunction with" the College in those years immediately before the zoning amendment took effect. But there was both ample evidence of an association between SAE and the College in the decades prior to 1972 and an absence of any explicit evidence that the College had altered the tenor of its relationship with SAE during the 1972 to 1976 time frame. The ZBA, as fact finder, was therefore free to infer that such association continued to exist between 1972 and 1976. Cf. State v. Palumbo, 113 N.H. 329, 330 (1973) (noting that the fact finder "may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided that they can be reasonably drawn therefrom").

In essence, SAE takes issue with the fact that the ZBA rejected portions of its evidence as irrelevant but made factual findings based on inferences it drew from the evidence presented by the College. It is well settled, however, that the ZBA is free to accept or reject proffered evidence as long as the decision is reasonable. See, e.g., Harborside Assocs. v. Parade Residence Hotel, 162 N.H. 508, 519 (2011) ("It was for the ZBA, however, to resolve conflicts in evidence and assess the credibility of the offers of proof."); Burke v. Town of Jaffrey, 122 N.H. 510, 514 (1982) ("The resolution of conflicts in the evidence and the determination of issues of fact are functions of the board."). Simply because the ZBA rejected SAE's evidence in favor of contrary evidence does not mean it acted unreasonably in reaching its decision. In turn, the trial court was not obligated to second guess the ZBA or make contrary factual findings, as it was acting in an appellate capacity and not as a fact finder. See Chester Rod & Gun Club, 152 N.H. at 583. Having reviewed the record submitted on appeal, we conclude that the ZBA acted reasonably in reaching its decision and that the trial court did not commit error in upholding the decision. See Merriam Farm, 168 N.H. at 199.

Finally, SAE claims that the Town violated its procedural due process rights by granting the College's motion for rehearing. We are not persuaded. The ZBA is given broad authority to grant a rehearing upon motion of an aggrieved party, see RSA 677:2 (2016), and we have recognized the inherent authority of local land use boards "to reverse themselves at any time prior to final decision if the interests of justice so require," 74 Cox St. v. City of Nashua, 156 N.H. 228, 231 (2007). Nor do we agree that reversal is required based on SAE's allegation that the ZBA member who drafted the initial decision and participated in the decision to grant the rehearing was biased. The mere fact the ZBA member requested that Dartmouth, an abutter, be notified of the decision does not, in and of itself, establish a bias; and SAE has not cited any authority supporting a contrary conclusion. In the first place, directing the zoning administrator to distribute the decision to the College did not constitute an ex parte communication. The e-mail from the ZBA to the zoning administrator was a communication within the municipal body. Moreover, the decision itself is a publicly available document and SAE was provided with a copy of it. Thus, we agree with the trial court that SAE's procedural due process rights were not violated.

We note that SAE presented 18 issues in its notice of appeal for our review but briefed only six. To the extent that this opinion does not dispose of the issues not briefed, we deem them waived. See Town of Londonderry v. Mesiti Dev., 168 N.H. 377, 379-80 (2015) (noting that issues raised in the notice of appeal but not briefed are deemed waived).

To summarize, we affirm the rulings of the ZBA on all issues addressed herein except that of whether SAE itself qualifies as an "Institution" in its own right under the zoning ordinance. As to that issue, we vacate the ruling of the ZBA and remand for further proceedings consistent with this opinion.

Affirmed in part; vacated in part; and remanded.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred; SMUKLER, J., retired superior court justice, specially assigned under RSA 490:3, concurred.