# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0398, <u>Town of Pelham v. Brookwood Realty Group, LLC</u>, the court on April 13, 2020, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The respondent, Brookwood Realty Group, LLC, appeals an order of the Superior Court (<u>Temple</u>, J.), following an evidentiary hearing, requiring that it remove certain construction material and equipment stored outside on its property in violation of the zoning ordinance for the petitioner, the Town of Pelham, and enjoining further outdoor storage of construction material and equipment. <u>See</u> RSA 676:15 (2016). On appeal, the respondent argues that the ordinance is ambiguous, and that the trial court erred by not applying a rule of construction from other jurisdictions that would have resolved the alleged ambiguity in the respondent's favor because, it claims, the town did not prove a public harm. The respondent further contends that the trial court misapplied joint venture law, and erred by not applying the doctrine of laches.

The interpretation of a zoning ordinance is a question of law, which we review <u>de novo</u>. <u>Dartmouth Corp. of Alpha Delta v. Town of Hanover</u>, 169 N.H. 743, 754 (2017). The meaning of an ordinance is determined from its interpretation as a whole, and not by construing isolated words or phrases. <u>See</u> <u>id</u>. When the language of a zoning ordinance is plain and unambiguous, we do not look beyond the ordinance itself to determine legislative intent. <u>Id</u>.

Laches is an equitable doctrine that bars litigation when the plaintiff has slept on its rights. <u>Tarnawa v. Goode</u>, 172 N.H. 321, 331 (2019). "Laches is not a mere matter of time, but is principally a question of the inequity of permitting the claim to be enforced – an inequity founded on some change in the conditions or relations of the property or the parties involved." <u>Id</u>. (quotation omitted). The party claiming laches has the burden to prove both that the delay was unreasonable and that prejudice resulted. <u>Id</u>. The trial court has broad discretion to decide whether the circumstances justify its application, and unless the trial court's decision is unsupported by the evidence or erroneous as a matter of law, we will uphold it. <u>Id</u>.

The trial court found the following relevant facts. At some point as early as 2009 and no later than 2013, the planning director for the town had a conversation with one of the members of the respondent limited liability company regarding the respondent's property. During that conversation, the respondent's member asked "if the respondent could temporarily store a load or two of bridge steel at the property." The members of the respondent are also members of a separate limited liability company that is in the business of constructing roads and bridges (construction company). Although the planning director believed that storing construction material on the property would violate the zoning ordinance, he gave the respondent's member "permission to temporarily store one or two loads of bridge steel at the property with the caveat that it would have to be removed if the Town received any complaints about it." The planning director "believed that bridge steel would be stored at the property for only a few months."

Subsequently, the construction company began storing construction material and equipment outside at the property, and depositing and retrieving such material and equipment by commercial truck. The material and equipment did not belong to the respondent, and the construction company did not pay the respondent to store the material and equipment. The amount of material stored at the property was "significantly more than one or two loads of materials." In response to complaints about trucking traffic, the respondent improved an alternate access driveway that allowed the construction company to avoid a residential neighborhood.

In response to the complaints, the planning director inspected the property, and in April 2013, after discovering the amount of material stored, he notified the respondent that its use was not permitted, and that the respondent was required either to remove the material or apply for a variance and site plan approval. For the next two years, the respondent continued to store the construction company's material at the property, but in June 2015, at the urging of the town, it applied for a variance and site plan approval. Before the town's zoning board of adjustment or planning board could act on the applications, however, the respondent withdrew them, stating that it intended to revise and resubmit them. In May 2016, the respondent again assured town officials that it would re-file its variance application, and agreed not to store any more construction material at the property and to permit the town to inspect the property periodically.

By December 2016, after the respondent still had not re-filed its variance application, the town notified it that it had until January 27, 2017 either to remove the construction material or apply for a variance. The respondent took neither action, and on October 31, 2017, the town issued a notice of violation directing the respondent to remove all construction material by November 15,

2

2017. The respondent failed to comply with the notice, and on April 18, 2018, the town filed the present matter.

The zoning ordinance provides, in relevant part, that "[n]o building or land shall hereafter be used or occupied and no building or part thereof shall be erected, moved or altered unless in conformity with the regulations specified in this Ordinance for the district in which it is located." The ordinance contains a table of uses defining uses that are permitted by right or by special exception in each zoning district, and prefaces the table with the following statement: "Only the following principal uses are permitted." None of the permitted uses identified in the table of uses describes outdoor storage, the storage of construction materials, or a "construction yard." The ordinance defines the B-5 zoning district, in which the property is located, as follows:

> The B-5 district is intended for businesses such as professional office space, banks, medical services, educational facilities, health clubs, recreation facilities, family entertainment, retail shopping, grocery stores and eating and drinking establishments with consumption limited to the premises. Businesses prohibited from this district include new or used car dealerships, junk yards, gas stations, car washes, fast food restaurants with drive through windows and single tenant "Big Box" retail buildings that exceed 75,000 square feet. Additionally, no structure shall exceed forty (40) feet in height excluding chimneys and other accessory structures not intended for human occupancy.

The trial court concluded that the ordinance is a "permissive zoning ordinance," see Town of Carroll v. Rines, 164 N.H. 523, 527 (2013), and that it unambiguously prohibits the outdoor storage of construction material. In so ruling, the trial court rejected the respondent's argument that the "prohibitory" language in the definition of the B-5 zoning district rendered the ordinance ambiguous, and meant that any use within that zone that is not expressly prohibited by the definition is permitted. The trial court reasoned that the definition of the zoning district was "intended to aid the reader in understanding the types of uses that are generally intended for the B-5 zoning district, as well as the types of uses that are generally prohibited," but that it was "not intended to describe all of the uses that are not permitted within the B-5 zoning district." The trial court further reasoned that the language of the B-5 definition was consistent with the table of uses, and concluded that, when the provisions were read together, it was "clear that [the definition of the B-5 zoning district] does not permit all uses that it does not explicitly prohibit." Finally, the trial court observed that the respondent was not simply storing its own possessions on the property, but was allowing the construction company,

a third party, to store its personal property there, and to pick up and drop off construction material and equipment with commercial trucks.

The trial court rejected the respondent's laches argument, reasoning that any delay in bringing suit was reasonable, and that the respondent was not prejudiced by the delay. As to reasonableness, the trial court observed that "[b]eginning in April 2013, the [town had] repeatedly urged the respondent to apply for a variance and site plan approval," that the respondent had in fact sought the requisite regulatory approval, and that, after withdrawing its applications, the respondent had "assured the [town] on several occasions that it intended to refile its variance application." The trial court found that the town had relied, at least in part, on the respondent's multiple assurances in not filing suit at an earlier time. With respect to prejudice, the trial court found that "there is no reason to believe that any evidence has been lost or destroyed as a result of the delay in this case," that any economic impact in having to store the material elsewhere was an impact to the construction company, not the respondent, and that the construction company ultimately benefitted by being able to store its material free of charge for many years.

On appeal, the respondent argues that the ordinance is ambiguous because: (1) the provision stating that "[n]o building or land shall hereafter be used or occupied and no building or part thereof shall be erected, moved or altered unless in conformity with the regulations specified in this Ordinance for the district in which it is located" does not use the term, "permitted"; (2) the definition of the B-5 zoning district contains "prohibitory" language; and (3) the ordinance does not contain any provision regulating outdoor storage. Because, the respondent claims, the ordinance is ambiguous, and because the town did not prove that the outdoor storage resulted in public harm, but see Boulders at Strafford v. Town of Strafford, 153 N.H. 633, 639 (2006) (noting that, in addressing due process challenge to zoning ordinance, reasonableness of the zoning provision is presumed), the respondent argues that the trial court erred by not resolving the alleged ambiguity in its favor. The respondent further argues that, because its members are also the members of the construction company, the companies necessarily formed a "joint venture," and by treating them as separate companies, the respondent contends that the trial court misapplied the law of joint venture. Finally, the respondent argues that the trial court was compelled to rule in its favor on its laches defense.

As the appealing party, the respondent has the burden of demonstrating reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's well-reasoned order, the respondent's challenges to it,

4

the relevant law, and the record submitted on appeal, we conclude that the respondent has not demonstrated reversible error.[1]  See id.

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,<br>Clerk**

---

[1] To the extent that the respondent argues that the ordinance is unconstitutional as applied to its property, the record on appeal does not reflect that it raised this argument in the trial court. See State v. Blackmer, 149 N.H. 47, 48 (2003).  Nor is the argument adequately developed in its brief.  See id. at 49.  Arguments raised in the notice of appeal that the respondent has not briefed are waived.  See id.